**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NAMCO, LLC,[1] | ) | Case No. 13-10610 (PJW) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

**DEBTOR'S MOTION FOR ORDER: (A) APPROVING THE DISCLOSURE
STATEMENT; (B) FIXING THE VOTING RECORD DATE; (C) APPROVING
THE SOLICITATION MATERIALS AND PROCEDURES FOR DISTRIBUTION
THEREOF; (D) APPROVING THE FORMS OF BALLOTS AND
ESTABLISHING PROCEDURES FOR VOTING ON THE DEBTOR'S
PLAN OF REORGANIZATION; (E) SCHEDULING A HEARING AND
ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN
RESPECT OF THE CONFIRMATION OF DEBTOR'S PLAN OF
REORGANIZATION; AND (F) GRANTING RELATED RELIEF**

Namco, LLC ("NAMCO" or, the "Debtor"), as debtor and debtor in possession, hereby

moves this Court (the "Motion") for entry of an order, for entry of an order (the "Disclosure

Statement Order") (a) approving the Disclosure Statement With Respect to the Chapter 11 Plan

of Reorganization for Namco, LLC (as the same may be amended, modified and/or

supplemented after the date thereof, the "Disclosure Statement"); (b) fixing the voting record

date; (c) approving the solicitation materials and procedures for distribution thereof; (d)

approving the forms of ballots and establishing procedures for voting on the Chapter 11 Plan of

Reorganization for Namco, LLC (as the same may be amended, modified and/or supplemented

after the date thereof, the "Plan");[2] (e) scheduling a hearing and establishing notice and objection

---

[1]    The Debtor in this case, along with the last four digits of its federal tax identification number is Namco, LLC (5145).

[2]    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

procedures in respect of confirmation of the Plan (the "Confirmation Hearing"); and (f) granting

related relief.  In support of this Motion, the Debtor's respectfully represent as follows:

## BACKGROUND

1.      On March 24, 2013 (the "Petition Date"), the Debtor commenced a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy

Court for the District of Delaware (the "Court").  The Debtor continues to operate its business

and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.  On April

4, 2013, the Office of the United States Trustee formed an official committee of unsecured

creditors (the "Creditors' Committee").

2.      NAMCO is headquartered in Manchester, Connecticut. NAMCO was founded in

1962 as a retailer of pools, pool accessories and other recreational equipment in the Northeast

and Mid-Atlantic United States. NAMCO also owns and operates a chemical repackaging

facility in Manchester, and sells chemicals in NAMCO's retail stores, sells product on a

wholesale basis to distributors (under a different label), and through its website;

www.namcopool.com. Due to its size and buying power, NAMCO is often able to offer the

lowest prices in the markets it serves without compromising its margins.  Additionally, many of

NAMCO's competitors are single location, low-volume retailers that are not able to offer product

selection and customer service on par with NAMCO. NAMCO currently operates thirty-seven

(37) full-line retail stores in ten states throughout the Northeast and Mid-Atlantic, with store

sizes ranging from 11,000 to 60,000 square feet, and employs 288 people as of the Petition Date.

Additionally, NAMCO has approximately 190,000 square feet of office/distribution center space,

and 40,000 square feet of space with respect to a chemical re-packaging facility, located next to

each other, in Manchester CT.

2088253-1

3.      In December 2003, NAMCO was acquired by Whitney Equity Holdings Corp one of the country's oldest private equity groups, from the Radocchia family.  In connection with the purchase, NAMCO was organized in 2003 as a Delaware limited liability company.  In the years following the transaction with Whitney, NAMCO has faced several transactional, operational and technological challenges.

4.      From January of 2008 through 2012, NAMCO cut $30.7M in expenses; and its gross margin percentage grew from 41.0% to 51.3%.  However, due to the combination of a very difficult economy; erratic summer weather patterns; and a consistent lack of working capital, NAMCO's top line sales dropped by 9.4% on a comparative store basis from 2008 to 2011.

5.      Operationally, the Debtor has built a strong company with a valuable and commendable reputation throughout the industry, primarily achieved by hiring a good, hardworking team and timely fulfillment of orders. With spring, comes the beginning of NAMCO's busy season, with approximately 64% of its sales revenues occurring in the April thru July time period. In fact, notwithstanding NAMCO's current liquidity issues, NAMCO anticipates a strong sales performance over the upcoming months.

6.      For the fiscal year ended December 30, 2012, the Debtor's consolidated financial statements showed net sales of approximately $82.8 million, compared with $92.2 million for the fiscal year ended January 1, 2012.  The decrease in net sales is attributable to a decline in overall demand within the pool and patio industry sector due to a poor housing market, an overall weak U.S. economy, complicated by unfavorable weather conditions (cool and wet) in the Debtor's operating markets.

7.      In fiscal 2013, January net sales were below last year by $0.6 million or 48%, February sales were below last year by $1.5 million or 42%, and month-to-date sales through

3

March 20th were below last year by $1.2 million or 32%. Net sales were unfavorably impacted by weak U.S. economic conditions within the Debtor's demographic, tight liquidity conditions negatively affecting the Debtor's ability advertise and bring in merchandise, along with unfavorable weather conditions within the Debtor's operating markets.  Additionally, in efforts to minimize operating costs in January 2013, the Debtor temporarily closed a number of stores and operated 21 fewer stores than it did in January 2012, thus affecting sales negatively.

8.      Further factual background relating to the Debtor's commencement of this chapter 11 case is set forth in additional detail in the Declaration of Lee Diercks in Support of First Day Motion (the "Diercks Declaration") filed on the Petition Date and incorporated herein by reference and in the Disclosure Statement.

## JURISDICTION

9.      This Court has jurisdiction over this motion (the "Motion") pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicates for the relief sought herein are sections 105, 502, 1125, 1126 and 1128 of title 11 of the United States Code (the "Bankruptcy Code") Rules 2002, 3001, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 3017-1 of the Local Bankruptcy Rules for the District of Delaware ( the "Local Bankruptcy Rules").

## RELIEF REQUESTED

11.     By this Motion, the Debtor seeks the entry of the Disclosure Statement Order, substantially in the form annexed hereto as Exhibit 1, approving the substantive and procedural matters central to the confirmation process for the Plan, including approval of (i) the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the

4

Bankruptcy Code, and (ii) establishing a record date for determining the holders of claims entitled to vote on the Plan and approving procedures for the solicitation of votes, including (a) approving solicitation packages and procedures for the distribution thereof, (b) approving forms of ballots, (c) approving notices to non-voting classes under the Plan, (d) establishing a voting deadline for receipt of the ballots and (e) approving procedures for vote tabulation; and (iii) scheduling a hearing to consider confirmation of the Plan and approving the form and manner of notice thereof.

12.     For the convenience of the Court and all parties in interest, a summary timeline identifying each of the relevant dates and deadlines proposed herein by the various procedures is set forth below:

| Event/Deadline | Date |
|---|---|
| Disclosure Statement Objection Deadline: | June 17, 2013 at 4:00 p.m. Eastern Time |
| Record Date: | First Day of Disclosure Statement Hearing |
| Disclosure Statement Hearing: | June 24, 2013  at 10:00 a.m. Eastern Time (First Day of Disclosure Statement Hearing) |
| Solicitation Deadline: | June 28, 2013 |
| Deadline to Publish the Confirmation Hearing Notice: | Seven (7) days after Entry of the Disclosure Statement Order |
| Plan Supplement Filing Date | Seven (7) days prior to the Confirmation Hearing |
| Voting Deadline: | July 26, 2013 at 4:00 p.m. Eastern Time |
| Plan Objection Deadline: | July 26, 2013 at 4:00 p.m. Eastern Time |
| Deadline to Reply to Confirmation Objections: | July 30, 2013 at 4:00 p.m. Eastern Time |
| Confirmation Hearing: | July 31 2013 at _____ _.m. Eastern Time |

13.     In light of the current posture of this chapter 11 case and the need to promptly proceed with the Plan process in order to comply with the Debtor's post-petition financing covenants, the Debtor believes that the proposed timeline and procedures requested herein are (a) reasonable and appropriate and (b) comply fully with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules; and therefore should be approved.

2088253-1

**BASIS FOR RELIEF**

A.    **THE DISCLOSURE STATEMENT CONTAINS
       ADEQUATE INFORMATION AND SHOULD BE APPROVED**

14.    Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan of reorganization. In that regard, section 1125(a)(1) of the Bankruptcy Code provides in pertinent part that:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the plan.  *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Dakota Rail, Inc.,* 104 B.R. 138, 142 (Bankr. D. Minn. 1989); *see also Talarico v. Thomas Crimmins Contracting Co.,* No. 94 Civ. 0420, 1995 WL 422034 at *5 (S.D.N.Y. July 18, 1995) ("A disclosure statement . . . is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests.") (citation omitted); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005 ("Precisely what constitutes adequate information in any particular instate will develop on a case-by-case basis); *In re Copy Crafters Quickprint Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a

flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties"). Fundamentally, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

15.     In examining the adequacy of the information contained in a disclosure statement, a bankruptcy court has broad discretion. *See Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *see also In re Oxford Homes*, 204 B.R. 264, 269 (Bankr. D. Me. 1997) (finding that Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts could exercise discretion to tailor them to each case's particular circumstances); *In re Dakota Rail*, 104 B.R. at 143 (holding that bankruptcy court has "wide discretion to determine . . . whether a disclosure statement contains adequate information, without burdensome, unnecessary, and cumbersome detail"). This grant of discretion was intended to facilitate the effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595-95, 1st Sess. 408-09 (1977). "In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest." Id. at 409. Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix*, 278 B.R. at 393; *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("[t]he legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a)").

7

16.     The Disclosure Statement contains ample and adequate information to allow parties in interest to make informed judgments about and, to the extent appropriate, vote on the Plan.  The Disclosure Statement includes information regarding, among other things: (a) the Debtor and its corporate history, assets, liabilities and businesses; (b) the conditions preceding the Debtor's decision to commence this chapter 11 case; (c) the significant events that have occurred during this chapter 11 case; (d) the classification and treatment of claims and equity interests under the Plan; (e) other material terms of the Plan and the means for its implementation; (f) information concerning the projected financial performance, valuation and other financial information of the Debtor; and (g) certain risk factors relating to the Plan.

17.     Excluding exhibits, the Disclosure Statement exceeds 70 pages in length and contains more than sufficient detail to permit holders of claims entitled to vote on the Plan to make an informed judgment whether to accept or reject the Plan.  The Debtor has made every effort to produce a disclosure statement that renders the Plan and process understandable.  Accordingly, the Debtor believes that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and should be approved.

18.     In addition, the Debtor requests that the Court authorize it to make non-material changes to the Disclosure Statement and related documents and appendices before distributing solicitation packages to each person in accordance with the Disclosure Statement Order.  If so permitted, the Debtor will file blacklined copies with the Court of any modified pages marked to reflect the changes from the prior version.

### B.      FIXING A RECORD DATE

19.     Bankruptcy Rule 3017(d) provides that upon approval of a disclosure statement, except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors, the debtor shall mail to all creditors and the U.S. Trustee, a copy of the plan

8

of reorganization, the disclosure statement, notice of the voting deadline and such other

information as the court may direct.  For the purposes of soliciting votes in connection with the

confirmation of a plan, "creditors and equity security holders shall include holders of stocks,

bonds, debentures, notes and other securities of record on the date the order approving the

disclosure statement is entered or another date fixed by the court, for cause, after notice and a

hearing."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision

regarding determination of the record date for voting purposes.

20.     In accordance with the Bankruptcy Rules, the voting record date is typically the

date a court enters an order approving a disclosure statement.  The Debtor therefore requests that

the Bankruptcy Court exercise its power under section 105(a) of the Bankruptcy Code to

establish the first day of the Disclosure Statement Hearing as the record date for purposes of

determining which creditors are entitled to vote on the Plan (the "Record Date").

### C.     APPROVING SOLICITATION MATERIALS AND PROCEDURES FOR DISTRIBUTION THEREOF

21.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders

of claims for the purpose of soliciting their votes and providing adequate notice of the hearing on

confirmation of a plan of reorganization:

> Upon approval of a disclosure statement,—except to the extent that
> the court orders otherwise with respect to one or more unimpaired
> classes of creditors or equity security holders—the debtor in
> possession, trustee, proponent of the plan, or clerk as the court
> orders shall mail to all creditors and equity security holders, and in
> a chapter 11 reorganization case shall transmit to the United States
> trustee:
>
> (1)     the plan or a court-approved summary of the plan;
>
> (2)     the disclosure statement approved by the court;
>
> (3)     notice of the time within which acceptances and
> rejections of the plan may be filed; and

> (4)     any other information as the court may direct,
> including any court opinion approving the
> disclosure statement or a court-approved summary
> of the opinion.
>
> In addition, notice of the time fixed for filing objections and the
> hearing on confirmation shall be mailed to all creditors and equity
> security holders in accordance with Rule 2002(b), and a form of
> ballot conforming to the appropriate Official Form shall be mailed
> to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

22.     After the Court has approved the Disclosure Statement as containing adequate

information pursuant to section 1125 of the Bankruptcy Code, the Debtor proposes to distribute

the Confirmation Hearing Notice (as defined below) and solicitation materials (the "Solicitation

Materials") including:

> (a)     the Disclosure Statement Order, excluding the exhibits annexed thereto;
>
> (b)     either
>
>> (1)     for parties in voting classes, a ballot, together with a return
>> envelope and the Disclosure Statement (with the Plan and other
>> exhibits annexed thereto) in CD-Rom or hard copy book, or
>>
>> (2)     for non-voting parties, a Notice of Non-Voting Status (as defined
>> below), as applicable; and
>
> (c)     with respect to holders of Claims in Classes 3 and 4, a letter from the
> Creditor's Committee recommending that such holders vote to accept the
> Plan, which letter will be in form and substance mutually agreeable to the
> Debtor, and the Creditors' Committee
>
> (d)     such other materials as the Court may direct.

23.     The Debtor expects that it will be able to commence distribution of the

Solicitation Materials no later than June 28, 2013 (the "Solicitation Commencement Date") to:

> (a)     all persons or entities identified on the Debtor's schedules of liabilities
> filed pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule
> 1007 (as amended or modified prior to the Record Date, the "Schedules")
> as holding claims, in an amount greater than zero dollars, excluding

10

scheduled claims that have been (i) superseded by a timely filed proof of claim, (ii) disallowed or expunged, or (iii) paid in full;

(b)     all parties who timely filed proofs of claim, as reflected on the official claims register maintained by Epiq Bankruptcy Solutions, LLC (the "Balloting Agent" or "Epiq"), as of the close of business on the Record Date, and whose claims have not been disallowed or expunged prior to the Solicitation Commencement Date; and

(c)     the assignee of a transferred and assigned claim (whether a filed claim or a party included on the Schedules) shall be entitled to receive such Solicitation Materials if the transfer and assignment has been noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the Record Date.

24.     The Debtor shall commence to distribute or cause to be distributed by the Solicitation Commencement Date, the Disclosure Statement Order, the Confirmation Hearing Notice, the Disclosure Statement (together with the Plan and other exhibits annexed thereto) and such other materials as the Court may direct to, among other parties (to the extent such parties did not receive the Solicitation Materials):

(a)     the United States Trustee for Region 3 (the "US Trustee");

(b)     Pachulski Stang Ziehl & Jones LLP, as counsel for the Creditors' Committee;

(c)     counsel to the Debtor's prepetition and postpetition secured lenders;

(d)     the Securities Exchange Commission;

(e)     the Internal Revenue Service;

(f)     relevant federal, state and local taxing authorities at their statutory addresses;

(g)     parties who have filed a request for service of all pleadings pursuant to and in accordance with Bankruptcy Rule 2002 as of the day prior to service; and

25.     The Plan and Disclosure Statement also will be available via the internet at http://www.deb.uscourts.gov and http://dm.epiq11.com/namco.  In addition, the Debtor will provide parties in interest with a hard copy of the Disclosure Statement upon written request.

11

26.     During this chapter 11 case, the Debtor has had mail returned by the United States Postal Service as undeliverable.  The Debtor anticipates that some of the notices served in these cases, including notices of the Disclosure Statement Hearing (the "<u>Disclosure Statement Notice</u>", hereto as Exhibit F), notices of the bar dates established in these cases and notices of the commencement of these cases, will also be returned as undeliverable. The Debtor believes that it would be costly and inefficient to distribute Solicitation Materials to the same addresses to which undeliverable notices were distributed. Therefore, the Debtor seeks the Court's approval for a departure from the strict notice rule, excusing the Debtor from distributing Solicitation Materials to those entities listed at such addresses if the Debtor is unable to obtain accurate addresses for such entities before the Solicitation Commencement Date after having exercised good faith efforts to locate a more current address.  Further, if the Debtor sends Solicitation Materials, which are deemed undeliverable, and, in good faith cannot obtain more current addresses, the Debtor seeks to be excused from attempting to re-deliver Solicitation Materials to such entities.

27.     The Debtor believes that the proposed notice and service procedures are fair and reasonable and are designed to provide holders of claims with adequate notice within the meaning of section 1125(a) of the Bankruptcy Code and, thus, should be approved.

### D.     APPROVING FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN

**(i)     Approving Forms Of Ballots And Distribution Thereof**

28.     Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan."  The Debtor has prepared ballots (collectively, the "Ballots") for voting on the Plan, substantially in the forms attached to the Disclosure Statement Order as Exhibits A and B.  Each of the Ballots is based upon Official Form No. 14, but has been modified to address the particular aspects of these chapter 11 cases

and to include certain additional information that the Debtor believes to be relevant and appropriate for the class of claims that is entitled to vote to accept or reject the Plan.

29.     The Ballots will be distributed to holders of claims entitled to vote on the Plan in Class 3 (Second Lien Claims), and Class 4 (General Unsecured Claims) (collectively, the "Voting Classes").  All other classes under the Plan are either unimpaired and conclusively presumed to have accepted the Plan or are deemed to reject the Plan.  The unimpaired classes conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code are Class 1 (Priority Non-Tax Claims) and Class 2 (Senior Lender Claims).  Under the Plan, the class of interests deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code is: Class 5 (Existing Equity Interests).

30.     Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).  The Ballots have been prepared in accordance with Bankruptcy Rule 3018(c).  Thus, the Debtor believes that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and should, therefore, be approved.

**(ii)     Proposed Notices To Deemed Accepting and Deemed Rejecting Classes**

31.     As discussed above, certain Classes are *not* entitled to vote on the Plan.  As a result, they will *not*  receive Solicitation Materials and, instead, the Debtor proposes that such parties receive an appropriate form notifying them of their non-voting status.

32.     Specifically, Claims in Classes 1 (Priority Non-Tax Claims) and 2 (Senior Lender Claims) are designated under the Plan as unimpaired and, therefore, are conclusively presumed to accept the Plan.  See 11 U.S.C. § 1126(f).

2088253-1

33.     Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a
> summary of the plan shall not be mailed to any unimpaired class,
> notice that the class is designated in the plan as unimpaired and
> notice of the name and address of the person from whom the plan
> or summary of the plan and disclosure statement may be obtained
> upon request and at the plan proponent's expense, shall be mailed
> to members of the unimpaired class together with the notice of the
> time fixed for filing objections to and the hearing on confirmation.

34.     Accordingly, in lieu of a Ballot, the Debtor proposes to send to holders of

unimpaired claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Senior Lender Claims) a

notice of non-voting status, substantially in the form annexed to the Disclosure Statement Order

as Exhibit C (the "Notice of Non-Voting Status") in the Solicitation Materials sent to such

holders.

35.     In addition, and consistent with section 1126(g) of the Bankruptcy Code and

Bankruptcy Rule 3017(d), Solicitation Materials for holders of interests in Class 5 (Existing

Equity Interests) that are conclusively presumed to reject the Plan will include a Notice of Non-

Voting Status but not a ballot.

36.     The Notice of Non-Voting Status sets forth the manner in which a copy of the

Plan and Disclosure Statement may be obtained.  The Debtor submits that such notice satisfies

the requirements of the Bankruptcy Code and Bankruptcy Rule 3017(d).  Accordingly, the

Debtor requests that the Court determine that it is not required to distribute copies of the Plan

and Disclosure Statement to any holder of an unimpaired claim in Class 1 (Priority Non-Tax

Claims) and Class 2 (Senior Lender Claims), which are deemed to accept the Plan, or to any

holder of an interest in Class 5 (Existing Equity Interests), which is deemed to reject the Plan,

unless requested by such holder in writing.

### (iii)    Establishing Voting Deadline For Receipt Of Ballots

37.    Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims may accept or reject a plan.  The Debtor anticipates commencing the solicitation period on or before June 28, 2013.  Based on such schedule, the Debtor proposes that in order to be counted as a vote to accept or reject the Plan, each ballot must be properly executed, completed, and delivered to Epiq, as the Debtor's notice and claims agent, by (a) first-class mail; (b) overnight courier; or (c) personal delivery so as to be received by Epiq no later than 4:00 p.m. Eastern Time on July 26, 2013, or any other date set by the Court (the "Voting Deadline").  The Debtor proposes that the certification of the Ballots be filed on or before the date of the Confirmation Hearing.

38.    Assuming the Court enters the Disclosure Statement Order the day after the hearing to approve the Disclosure Statement, the Debtor's proposed deadlines – i.e., the Solicitation Deadline and Voting Deadline – will afford holders of claims entitled to vote on the Plan with more than ample time to review and analyze the solicitation materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed and any other information that the court may direct to certain holders of claims).  Accordingly, the Debtor requests that the Court approve the form of, and the proposed procedures and timeline for distributing, the Solicitation Materials to the holders of claims in the Voting Classes.

(iv)     **Approval Of Procedures For Vote Tabulation**

39.     Section 1126(c) of the Bankruptcy Code provides as follows:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two-thirds in
> amount and more than one-half in number of the allowed claims of
> such class held by creditors, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such
> plan.

40.     Section 1126(d) of the Bankruptcy Code provides as follows:

> A class of interests has accepted a plan if such plan has been
> accepted by holders of such interests, other than any entity
> designated under subsection (e) of this section, that hold at least
> two-thirds in amount of the allowed interests of such class held by
> holders of such interests, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such
> plan.

Further, Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may

temporarily allow the claim or interest in an amount which the court deems proper for the

purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).  Consistent with these

requirements, the Debtor proposes to use the procedures attached to the Disclosure Statement

Order as Exhibit D and incorporated by reference herein (the "Solicitation Procedures").

(v)     **Approval of the Solicitation Procedures; Ballot Tabulation**

41.     To ease and clarify the process of tabulating all votes received, the Debtor

proposes that a Ballot be counted in determining the acceptance or rejection of the Plan only if it

satisfies certain criteria.  Specifically, the Solicitation Procedures provide that the Debtor not

count a Ballot if it is, among other things, illegible, submitted by a holder of a claim that is not

entitled to vote on the Plan, unsigned or not clearly marked.

42.     Solely for the purpose of voting to accept or reject the Plan and not for the

purpose of the allowance of, or distribution on account of, a claim, the Debtor proposes that each

16

claim in a Voting Class be temporarily allowed in an amount equal to the amount of such claim as set forth by the Debtor on the applicable Ballot delivered by the Debtor to such party; provided, however, that the Debtor reserves the right to object to (a) the amount of any claim set forth for voting purposes on a Ballot, (b) the amount otherwise agreed to by the Debtor and the applicable claimant or (c) an amount ordered by the Court; provided, further, that the Debtor reserves the right to object to any proof of claim on any grounds including for purposes of distribution, or to amend and/or supplement the Debtor's schedules of assets and liabilities. Accordingly, this motion constitutes a request for temporary allowance of claims, solely for voting purposes, under Bankruptcy Rule 3018(a).

43.     In tabulating votes, the Debtor will use the hierarchy and rules identified in the Solicitation Procedures to determine the amount of the claim associated with each holder's vote.

44.     The proposed Solicitation Procedures set forth specific criteria with respect to the general tabulation of Ballots, the voting procedures applicable to beneficial holders of claims and the tabulation of such votes.

45.     All Ballots will be accompanied by first-class, postage prepaid, return envelopes pre-addressed to Epiq.  The Ballots may be returned to Epiq by first-class, postage prepaid mail in the pre-addressed return envelope provided in a Solicitation Materials with each Ballot or by overnight delivery (at the Holder's expense).

46.     The Debtor further proposes that the following Ballots not be counted nor considered for any purpose in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the Voting Deadline, unless the Debtor shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (c) any Ballot cast

17

by a person or entity that does not hold a claim in a Voting Class; (d) any Ballot that does not

contain an original signature; (e) any Ballot transmitted to Epiq by facsimile or other electronic

means; (f) any ballot that is superseded by a later received properly completed ballot from the

same creditor; and (g) any Ballot that is otherwise properly completed and returned but does not

indicate either an acceptance or rejection of the Plan or otherwise indicates both an acceptance or

rejection of the Plan.

47.     The Debtor believes that the foregoing Solicitation Procedures provide for a fair

and equitable voting process in light of the circumstances involved.

### E.     ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF THE PLAN

**(i)     Scheduling the Confirmation Hearing**

48.     Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall
> fix a time within which the holders of claims and interests may
> accept or reject the plan and may fix a date for the hearing on
> confirmation.

49.     In accordance with Bankruptcy Rule 3017(c) and in view of the Debtor's

proposed solicitation schedule outlined herein, the Debtor requests that a hearing on

confirmation of the Plan (the "Confirmation Hearing") be scheduled on July 31 at 11:00 a.m.

Eastern Time, subject to the Court's availability.  The Confirmation Hearing may be continued

from time to time by the Court or the Debtor without further notice other than adjournments

announced in open court.  The proposed timing for the Confirmation Hearing is in compliance

with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and will enable the Debtor

to pursue confirmation of the Plan in a timely fashion in order to ensure confirmation and

consummation of the Plan within the timeframe contemplated by the Debtor and the Creditors'

Committee.

2088253-1

(ii)    **Establishing Procedures For Notice Of The Confirmation Hearing**

50.    Bankruptcy Rule 2002(b) and (d) require not less than twenty-eight (28) days'
notice by mail to all creditors and equity security holders of the time fixed for filing objections to
consider confirmation of a chapter 11 plan.  Local Rule 3017-1(a) requires not less than thirty-
five (35) days notice to all creditors and equity security holders of the hearing to consider
approval of a disclosure statement.  In accordance with Bankruptcy Rules 2002 and 3017(d) and
Local Rule 3017-1, the Debtor proposes to provide to all known creditors and equity security
holders a copy of the notice substantially in the form attached to the Disclosure Statement Order
as Exhibit E (the "Confirmation Hearing Notice") simultaneously with the Solicitation Materials.

51.    By this motion, the Debtor requests that the Court approve the Confirmation
Hearing Notice, which contains, among other things: (a) instructions as to how to view or obtain
copies of the Disclosure Statement (including the Plan and other exhibits thereto), the Disclosure
Statement Order and all other materials in the Solicitation Materials (excluding Ballots) from
Epiq and/or the Court's website via PACER, (b) the Voting Deadline, (c) notice of the date by
which the Debtor will file the Plan Supplement, (d) the deadline to file objections to
confirmation of the Plan (the "Plan Objection Deadline"), (e) the Confirmation Hearing date and
time and (f) procedures for the temporary allowance of claims.  Because it is included in the
Solicitation Materials, such notice will be sent on or prior to the date that is 28 days prior to the
Plan Objection Deadline.

52.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it
finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R.
Bankr. P. 2002(l).  In addition to mailing the Confirmation Hearing Notice, the Debtor proposes
to publish the Confirmation Hearing Notice (in a format modified for publication), on a date that
is no less than fourteen (14) days prior to the Plan Objection Deadline, in the national edition of

19

*USA Today* or similar publication.  Additionally, the Debtor will post the Confirmation Hearing

Notice electronically on its reorganization website at http://dm.epiq11.com/namco.  The Debtor

believes that publication of the Confirmation Hearing Notice will provide sufficient notice of the

approval of the Disclosure Statement, the Record Date, the Voting Deadline, the time fixed for

filing objections to confirmation of the Plan, and the time, date, and place of the Confirmation

Hearing to persons who do not otherwise receive actual written notice by mail as provided for in

the Disclosure Statement Order.

53.     The Debtor submits that the foregoing procedures will provide adequate notice of

the Confirmation Hearing and, accordingly, request that the Court approve such notice as

adequate.

**(iii)     Establishing Procedures For The Filing Of Objections To Confirmation
Of The Plan**

54.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan

must be filed and served "within a time fixed by the court."  The Confirmation Hearing Notice

provides, and the Debtor requests that the Court direct that objections to confirmation of the Plan

or proposed modifications to the Plan, if any, must:

(a)     be in writing;

(b)     state the name and address of the objecting party and the amount and
nature of the claim or interest of such party;

(c)     state with particularity the basis and nature of any objection to the Plan
and, if practicable, proposed modification to the Plan that would resolve
such objection; and

(d)     be filed, together with proof of service, with the Court and served so that
they are received by the Notice Parties (as set forth below) no later than
4:00 p.m. (prevailing Eastern Time), on the date that is four (4) days prior
to the date of the Confirmation Hearing (the "Objection Deadline").

Notice Parties:

2088253-1

| | |
|---|---|
| Counsel to the Debtor: | Olshan Frome Wolosky LLP<br>Park Avenue Tower<br>65 East 55th Street<br>New York, NY 10022<br>Attention: Michael S. Fox, Esq.<br>              Jordanna L. Nadritch, Esq. |
| Counsel to the Creditors' Committee: | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street<br>17th Floor<br>Wilmington, DE 19801<br>Attention: Robert J. Feinstein, Esq.<br>              Bradford J. Sandler, Esq. |
| United States Trustee: | Office of the United States Trustee<br>844 King Street<br>Suite 2208, Lockbox 35<br>Wilmington, DE<br>Attention: Mark Kenney |

55.    The proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtor, and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing. The Debtor requests that the Bankruptcy Court approve this schedule pursuant to Bankruptcy Rule 3020.

## **NOTICE**

56.    Notice of this Motion has been provided to: (a) the United States Trustee for Region 3; (b) counsel to the Creditors' Committee; (c) the Internal Revenue Service; (d) the Securities Exchange Commission; (e) the Debtor's prepetition and postpetition secured lenders; (f) all relevant federal, state and local taxing authorities at their statutory addresses; and (g) all parties who have filed a request for service of all pleadings in this case.

21

**No Previous Request**

57.      No previous request for the relief sought herein has been made to this or any other

Court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order,

substantially in the form annexed hereto, granting the Motion and such other and further relief as

may be just and proper.

Dated: May 17, 2013                      A. M. SACCULLO LEGAL, LLC

                                         */s/ Anthony M. Saccullo*
                                         Anthony M. Saccullo (Bar No. 4141)
                                         Thomas H. Kovach (Bar No. 3964)
                                         27 Crimson King Drive
                                         Bear, Delaware 19701
                                         (302) 836-8877
                                         (302) 836-8787 (facsimile)
                                         ams@saccullolegal.com
                                         kovach@saccullolegal.com

                                                  and

                                         Michael S. Fox, Esquire
                                         Jordanna L. Nadritch, Esquire
                                         Jonathan T. Koevary, Esquire
                                         OLSHAN FROME WOLOSKY LLP
                                         Park Avenue Tower
                                         65 East 55th Street
                                         New York, New York 10022
                                         (212) 451-2300

                                         *Counsel to the Debtor*

2088253-1