IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| NAMCO, LLC, | ) Case No. 13-10610 (PJW) |
| Debtor. | ) Requested Objection Deadline: June 20, 2013 at 12:00 p.m. (Eastern) |
| | ) Requested Hearing Date: June 24, 2013 at 10:00 a.m. (Eastern) |

**DEBTOR'S MOTION FOR AUTHORIZATION AND APPROVAL
TO ENTER INTO INSURANCE PREMIUM FINANCING
AGREEMENT WITH AFCO CREDIT CORPORATION**

Namco, LLC ("NAMCO" or, the "Debtor"), as debtor and debtor in possession hereby moves this Court (the "Motion") pursuant to sections 105(a) and 364(c)(2) of title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, the Debtor states as follows:

### BACKGROUND

1. On March 24, 2013 (the "Petition Date"), the Debtor commenced a voluntary petition for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case. On April 4, 2013, the Office of the United States Trustee formed an official committee of unsecured creditors (the "Creditors' Committee").

2. NAMCO is headquartered in Manchester, Connecticut. NAMCO was founded in 1962 as a retailer of pools, pool accessories and other recreational equipment in the Northeast and Mid-Atlantic United States. NAMCO also owns and operates a chemical repackaging facility in Manchester, and sells chemicals in NAMCO's retail stores, sells product on a wholesale basis to

2149717-1

distributors (under a different label), and through its website; www.namcopool.com. Due to its size and buying power, NAMCO is often able to offer the lowest prices in the markets it serves without compromising its margins. Additionally, many of NAMCO's competitors are single location, low-volume retailers that are not able to offer product selection and customer service on par with NAMCO. NAMCO currently operates thirty-seven (37) full-line retail stores in ten states throughout the Northeast and Mid-Atlantic, with store sizes ranging from 11,000 to 60,000 square feet, and employs 288 people as of the Petition Date. Additionally, NAMCO has approximately 190,000 square feet of office/distribution center space, and 40,000 square feet of space with respect to a chemical re-packaging facility, located next to each other, in Manchester CT.

3. In December 2003, NAMCO was acquired by Whitney Equity Holdings Corp one of the country's oldest private equity groups, from the Radocchia family. In connection with the purchase, NAMCO was organized in 2003 as a Delaware limited liability company. In the years following the transaction with Whitney, NAMCO has faced several transactional, operational and technological challenges.

4. From January of 2008 through 2012, NAMCO cut $30.7M in expenses; and its gross margin percentage grew from 41.0% to 51.3%. However, due to the combination of a very difficult economy; erratic summer weather patterns; and a consistent lack of working capital, NAMCO's top line sales dropped by 9.4% on a comparative store basis from 2008 to 2011.

5. Operationally, the Debtor has built a strong company with a valuable and commendable reputation throughout the industry, primarily achieved by hiring a good, hardworking team and timely fulfillment of orders. With spring, comes the beginning of NAMCO's busy season, with approximately 64% of its sales revenues occurring in the April thru July time period. In fact,

notwithstanding NAMCO's current liquidity issues, NAMCO anticipates a strong sales performance over the upcoming months.

6. For the fiscal year ended December 30, 2012, the Debtor's consolidated financial statements showed net sales of approximately $82.8 million, compared with $92.2 million for the fiscal year ended January 1, 2012. The decrease in net sales is attributable to a decline in overall demand within the pool and patio industry sector due to a poor housing market, an overall weak U.S. economy, complicated by unfavorable weather conditions (cool and wet) in the Debtor's operating markets.

7. In fiscal 2013, January net sales were below last year by $0.6 million or 48%, February sales were below last year by $1.5 million or 42%, and month-to-date sales through March 20th were below last year by $1.2 million or 32%. Net sales were unfavorably impacted by weak U.S. economic conditions within the Debtor's demographic, tight liquidity conditions negatively affecting the Debtor's ability advertise and bring in merchandise, along with unfavorable weather conditions within the Debtor's operating markets. Additionally, in efforts to minimize operating costs in January 2013, the Debtor temporarily closed a number of stores and operated 21 fewer stores than it did in January 2012, thus affecting sales negatively.

8. Further factual background relating to the Debtor's commencement of this chapter 11 case is set forth in additional detail in the Declaration of Lee Diercks in Support of First Day Motion (the "<u>Diercks Declaration</u>") filed on the Petition Date and incorporated herein by reference.

## JURISDICTION

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3

2149717-1

10.   The statutory predicates for the relief requested herein are sections 105(a), and Bankruptcy Code section 364(c)(2).

**RELIEF REQUESTED**

11.   By its Motion, the Debtor is seeking authorization to enter into a Premium Financing Agreement (the "Agreement") with AFCO Credit Corporation ("AFCO"), a copy of which is annexed hereto as Exhibit "A," to finance insurance premiums necessary in the operating of the Debtor's business.

12.   The policies (the "Policies") will bear total premiums of $405,073.26, inclusive of all finance charges. Specifically, the Agreement provides for a cash down payment of $141,686.65, an amount financed of $263,386.61, and a finance charge of $3,220.19 to be paid in 8 monthly payments of $33,352.85.

13.   All policies have been renewed effective June 1, 2013, but a down payment is immediately due and the remainder must be financed.

14.   The Policies are necessary for the Debtor's ability to operate and include property, auto, general liability, umbrella and transport. It is essential for the Debtor to maintain them in the interest of the preservation of the property, assets and business of the Debtor and its creditors. The Debtor requires financing to maintain the Policies.

15.   The Debtor has been unable to obtain unsecured credit. AFCO has agreed to finance the payment of the premiums for the Policies substantially in accordance with the terms of the attached Agreement.

16.   Accordingly, the Debtor desires to finance the policies through AFCO which requires the Debtor to enter into the Agreement, which grants AFCO a security interest in the gross unearned or returned premiums and other amounts due to the Debtor under the policies that would be payable

in the event of cancellation of the insurance policies and loss payments that would reduce the unearned premiums.

17. In view of the importance of maintaining insurance coverage with respect to business activities and the preservation of the Debtor's cash flow and estate by financing the insurance premiums, the Debtor believes that it would be in the best interest of the Debtor's estate and creditors to induce AFCO to enter into such Agreement.

18. In the event that AFCO is not granted a security interest in the insurance policies, AFCO will be unwilling to finance said policies.

## SUMMARY OF PREMIUM FINANCE AGREEMENT

19. Pursuant to Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure and Rule 4001-2(a) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the following is a summary of the provisions of the Agreement.

| Annual Percentage Rate | 3.25% (Agreement at 1) |
| --- | --- |
| Maturity | 8 months, ending with the last monthly payment on February 1, 2013. (Agreement at 1) |
| Power of Attorney | The Debtor appoints AFCO as attorney in fact with full authority to (i) cancel all insurance financed by AFCO, (ii) received all sums assigned to AFCO and (iii) execute and deliver in its behalf all documents relating to the agreement. (Agreement at 2) |
| Cancellation | Upon Namco's default, AFCO may cancel all insurance policies after giving statutory notice. |
| Security Interest | As security for payments to be made, the Debtor grants AFCO the gross unearned or returned premiums and other amounts due to the Debtor under the policies that would be payable in the event of cancellation of the insurance policies and loss payments that would reduce the unearned premiums. (Agreement at 2) |

| Borrowing | Amount Financed $263,386.61 (Agreement at 1) |
|---|---|
| Fees | Finance Charge: $3,220.19 (Agreement at 1) |
| Limitation of Liability | AFCO's liability limited to principal amount outstanding, except in event of gross negligence or willful misconduct. (Agreement at 2) |

## BASIS FOR RELIEF

20. § 364 of the Bankruptcy Code, in relevant part, states as follows:

**§ 364. Obtaining credit**

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C.A. § 364

21. In order to make premium payments, AFCO requires a first priority security interest in:

> (i) any and all unearned premiums and dividends which may become payable under the financed insurance Policies for whatever reason;

> (ii) loss payments which reduce the unearned premiums under the Policies, subject to any mortgagee or loss payee interests; and

> (iii) any state guarantee fund relating to the Policies.

22. The Debtor seeks a Court order granting such security interests pursuant to the Motion. Courts have granted similar relief in other cases. *See e.g., In re PNG Ventures, Inc.*, Case No. 09-13162 (CSS) (Bankr. D. Del. September 29, 2009); *In re California Waste Services, LLC*, Case No. 02-13184(BRL) (June 6, 2003); *In re Leo D. Bernstein & Sons, Inc. d/b/a Bernstein Display*, Case No. 02-14692(ALG) (May 9, 2003); *In re Karta Corp.*, Case No, 02-22028(ASH) (Sept. 30, 2002); *In re Carolina Bbq Chicago, Inc. d/b/a Brother Jimmy's*, Case No. 00-13529 (JHG) (Oct. 5, 2000). The Debtor submits that relief is appropriate here in order to allow the Debtor to make premium payments on its Policies.

## **NOTICE**

23. Notice of this Motion has been provided to (i) the US Trustee for Region 3; (ii) counsel to the Debtor's secured lender; (iii) counsel to the Creditors' Committee; (iv) all entities requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that such notice is sufficient under the circumstances.

24. No prior request for the relief sought herein has been made heretofore

2149717-1

## CONCLUSION

**WHEREFORE**, the Debtor respectfully request that this Court enter an Order, substantially in the form annexed hereto as Exhibit "B", pursuant to section 364(c)(2) of the Bankruptcy Code authorizing the Debtor to enter into the Premium Finance Agreement and approving the terms thereof, and for such other and further Order as to this Court seems just and proper.

Dated: June 13, 2013

A. M. SACCULLO LEGAL, LLC

*/s/ Anthony M. Saccullo*
Anthony M. Saccullo (Bar No. 4141)
Thomas H. Kovach (Bar No. 3964)
27 Crimson King Drive
Bear, Delaware 19701
(302) 836-8877
(302) 836-8787 (facsimile)
ams@saccullolegal.com
Kovach@saccullolegal.com
      and
Michael S. Fox, Esquire
Jordanna L. Nadritch, Esquire
Jonathan T. Koevary, Esquire
OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
*Counsel to the Debtor*

2149717-1