**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| NAMCO, LLC, | ) | Case No. 13-10610 (PJW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR NAMCO, LLC**

**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtor or any other party in interest and the Plan is subject to approval of the Bankruptcy Court and other customary conditions. The Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to the Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the District of Delaware. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THE PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTOR'S SECURITIES) PRIOR TO THE APPROVAL OF THE PLAN BY THE BANKRUPTCY COURT.**

Dated:  June 20, 2013
         Wilmington, Delaware

**OLSHAN FROME WOLOSKY LLP**
Michael S. Fox
Jordanna L. Nadritch
Jonathan T. Koevary
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone:  (212) 451-2300
Facsimile:  (212) 451-2222

*Counsel to the Debtor and Debtor-in-Possession*

**A. M. SACCULLO LEGAL, LLC**
Anthony M. Saccullo (Bar No. 4141)
Thomas H. Kovach (Bar No. 3964)
27 Crimson King Drive
Bear, Delaware 19701
(302) 836-8877
(302) 836-8787 (facsimile)
ams@saccullolegal.com
kovach@saccullolegal.com

*Co-Counsel to the Debtor and Debtor-in-Possession*

2161891-1

## TABLE OF CONTENTS

Page

**ARTICLE I DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS** ...................................................................................**5**

Section 1.01.     Definitions...............................................................................5
Section 1.02.     Interpretation; Application of Definitions and Rules of Construction..........................................................................14
Section 1.03.     Exhibits. ..................................................................................15

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS** ....................................**15**

Section 2.01.     General......................................................................................15
Section 2.02.     Unclassified Claims (Not entitled to vote on the Plan).............15
Section 2.03.     Classification of Claims and Interests.......................................16
Section 2.04.     Unimpaired Classes of Claims...................................................16
Section 2.05.     Impaired Classes of Claims and Interests. .................................16

**ARTICLE III TREATMENT OF CLAIMS AND INTERESTS** ............................................**16**

Section 3.01.     Satisfaction of Claims and Interests...........................................16
Section 3.02.     Treatment of Claims and Interests. ............................................17

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN** .........................................**20**

Section 4.01.     Each Impaired Class Entitled to Vote Separately .....................20
Section 4.02.     Acceptance by a Class of Claims...............................................21
Section 4.03.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown".............................................21
Section 4.04.     Elimination of Vacant Classes. ..................................................21

**ARTICLE V MEANS OF PLAN IMPLEMENTATION** ...................................................**21**

Section 5.01.     Introduction...............................................................................21
Section 5.02.     Corporate Action Non-Voting Securities...................................21
Section 5.03.     Effective Date Transactions.......................................................22
Section 5.04.     Securities Registration Exemption............................................23
Section 5.05.     Vesting of Assets in the Reorganized Debtor .............................23
Section 5.06.     Corporate Governance ...............................................................23
Section 5.07.     Cancellation of Existing Securities and Agreements.................23
Section 5.08.     Obligations Incurred After the Effective Date...........................24
Section 5.09.     General Unsecured Claims Administrator ..................................24
Section 5.10.     Post-Confirmation Operating Reports and United States Trustee Fees. ............................................................................24

**ARTICLE VI PRESERVATION AND PROSECUTION OF CAUSES OF ACTION HELD BY THE DEBTOR** ........................................**25**

Section 6.01.     Release of Avoidance Actions ...................................................25
Section 6.02.     Preservation and Prosecution of Causes of Action....................25

2161891-1

**ARTICLE VII PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS**..................................................................................26

Section 7.01.  Objections to Claims..................................................26
Section 7.02.  No Payment or Distribution Pending Allowance.......................27
Section 7.03.  Estimation. ...........................................................27

**ARTICLE VIII DISTRIBUTIONS UNDER THE PLAN** .....................27

Section 8.01.  Limitation to Full Recovery........................................27
Section 8.02.  Disbursing Agent ..................................................27
Section 8.03.  Timing of Distributions.............................................28
Section 8.04.  Saturdays, Sundays, or Legal Holidays. ............................28
Section 8.05.  Distribution Record Date. .........................................28
Section 8.06.  Delivery of Distributions. .........................................28
Section 8.07.  Method of Cash Distributions. ....................................28
Section 8.08.  Unclaimed Property. ...............................................29
Section 8.09.  Compliance with Tax Requirements.................................29
Section 8.10.  Setoffs. ............................................................29
Section 8.11.  Documentation Necessary to Release Lien..........................30
Section 8.12.  Distributions Under Twenty-Five Dollars ..........................30

**ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS**....................................30

Section 9.01.  General Treatment. ................................................30
Section 9.02.  Cure and Cure Objections. .........................................31
Section 9.03.  Assumption Conditioned upon Consummation of The Plan. ..........32
Section 9.04.  Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan ..................................................................32
Section 9.05.  Treatment of Rejection Claims. ....................................32
Section 9.06.  Reinstatement and Continuation of Insurance Policies. ............32

**ARTICLE X EFFECT OF CONFIRMATION** ..................................33

Section 10.01.  Binding Effect......................................................33
Section 10.02.  Continued Corporate Existence. ..................................33
Section 10.03.  Vesting of Property................................................33
Section 10.04.  Discharge of Claims Against and Interests in the Debtor..........33
Section 10.05.  Injunction Against Interference With Plan. .......................33
Section 10.06.  Injunction. ........................................................34
Section 10.07.  Releases............................................................35
Section 10.08.  Exculpation and Limitation of Liability. ..........................37
Section 10.09.  Injunction Related to Releases and Exculpation...................37
Section 10.10.  Administrative Expense Claims Incurred After the Confirmation Date. .....................................................37
Section 10.11.  Term of Injunctions or Stays.......................................38

**ARTICLE XI RETENTION OF JURISDICTION** .............................38

Section 11.01.     Exclusive Jurisdiction of Bankruptcy Court. ..............................................38
Section 11.02.     Non-Exclusive Jurisdiction of Bankruptcy Court. .....................................40
Section 11.03.     Failure of Bankruptcy Court to Exercise Jurisdiction. ..............................40

**ARTICLE XII CONFIRMATION AND EFFECTIVENESS OF THE PLAN ....................40**

Section 12.01.     Conditions Precedent to Confirmation. .......................................................40
Section 12.02.     Conditions Precedent to the Effective Date. ..............................................40
Section 12.03.     Waiver of Conditions Precedent and Bankruptcy Rule
                   3020(e) Automatic Stay. ............................................................................41
Section 12.04.     Effect of Failure of Conditions. .................................................................41

**ARTICLE XIII MISCELLANEOUS PROVISIONS ...............................................................42**

Section 13.01.     Binding Effect of Plan. ...............................................................................42
Section 13.02.     Severability. .................................................................................................42
Section 13.03.     Governing Law. ...........................................................................................42
Section 13.04.     Amendments. ...............................................................................................42
Section 13.05.     Revocation or Withdrawal of the Plan. .......................................................43
Section 13.06.     Confirmation Order. .....................................................................................43
Section 13.07.     Section 1125(e) of the Bankruptcy Code. ...................................................43
Section 13.08.     Notices. ........................................................................................................43
Section 13.09.     Filing of Additional Documents. ................................................................44
Section 13.10.     Time. ............................................................................................................44
Section 13.11.     Exhibits/Schedules. .....................................................................................44
Section 13.12.     Defenses with Respect to Impaired or Unimpaired Claims. ......................44
Section 13.13.     No Injunctive Relief. ....................................................................................45
Section 13.14.     No Admissions. ............................................................................................45
Section 13.15.     Extension of Time. .......................................................................................45
Section 13.16.     Creditors' Committee. ..................................................................................45
Section 13.17.     Payment of Statutory Fees. .........................................................................45
Section 13.18.     Conflict. .......................................................................................................45
Section 13.19.     Reservation of Rights. ..................................................................................46

2161891-1

## INTRODUCTION

Namco, LLC, the Debtor and Debtor-in-possession in the above-captioned case, proposes the following Plan for the resolution of the outstanding Claims against and Interests in the Debtor.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, certain tax matters and other consideration to be issued and/or distributed under the Plan.  Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and as set forth in the Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

The only Persons that are entitled to vote on the Plan are the Holders of Claims in Classes 3, and 4.  Such Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan.  No materials other than the Disclosure Statement, the respective schedules and exhibits attached thereto and referenced therein, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I

## DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS

### Section 1.01.    Definitions.

Unless otherwise provided in the Plan, all terms used herein shall have the meanings ascribed to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of the Plan, the following terms (which appear in the Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires:

1.    "*Administrative Expense Claim(s)*" means any Claim constituting (a) a cost or expense of administration of the chapter 11 case, of the kind specified in section 503(b), including section 503(b)(9), and 507(a)(2) of the Bankruptcy Code, including, but not limited to (i) any actual and necessary post-petition costs or expenses of preserving the estates of the Debtor, (ii) any actual and necessary costs and expenses of operating the business of the Debtor, (iii) tax obligations incurred after the commencement of the case, and (iv) Fee Claims and (b) United States Trustee fee claims.

2.    "*Administrative Expense Claims Bar Date*" means the date that is sixty (60) days after the Effective Date or such other date as the Bankruptcy Court determines.

3.    "*Allowed*" means, with reference to any Claim against the Debtor, (a) any Claim against the Debtor that has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed in a greater amount or no timely objection to allowance or request for estimation

5

has been interposed, (b) any timely filed proof of Claim (i) as to which no objection has been or is interposed in accordance the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court or under the terms set forth herein; *provided, however,* that (a) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" and (b) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date.

4.    "***Allowed _____ Claim(s)***" means, with respect to any specified Class or type of Claim, whether classified or unclassified, that the referenced Claim is an Allowed Claim.

5.    "***Amended Operating Agreement***" means the amended and restated operating agreement for the Reorganized Debtor in the form set forth in the Plan Supplement.

6.    "***Avoidance Action(s)***" means any and all Causes of Action which a trustee, Debtor-in-possession, the estate or other appropriate party in interest may assert under Chapter 5 of the Bankruptcy Code, including, but not limited to, sections 502(d), 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code, or any similar statute arising under applicable non-bankruptcy law.

7.    "***Ballot***" means the form distributed to each Holder of an Impaired Claim entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

8.    "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, together with all amendments and modifications thereto as applicable to the Chapter 11 Case.

9.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

10.    "***Bankruptcy Rule(s)***" means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under 28 U.S.C. § 2075, (b) the applicable Federal Rules of Civil Procedure, as amended and promulgated under 28 U.S.C. § 2072, (c) the applicable Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, to the extent applicable, and (d) any local rules and standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

6

11.     "*Board of Managers*" means the Board of Managers of the Debtor.

12.     "*Business Day(s)*" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Delaware are authorized or obligated by law, executive order or governmental decree to be closed.

13.     "*Cash*" or "*$*" means the lawful currency of the United States of America and its equivalents, including but not limited to bank deposits, checks and other similar items.

14.     "*Cause(s) of Action*" means any and all Claims, actions, proceeding, obligations, judgments, debts, accounts, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action (including against insiders), choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, without limitation, any Avoidance Actions, and rights of the Debtor.

15.     "*Chapter 11 Case*" or "*Case*" means the chapter 11 case of the Debtor, Case No. 13-10610 (PJW), entitled <u>In re Namco, LLC</u>, pending in the Bankruptcy Court.

16.     "*Claim(s)*" means a "claim" as defined in section 101(5) of the Bankruptcy Code.

17.     "*Class*" means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to section 1122 of the Bankruptcy Code.

18.     "*Confirmation*" means the entry by the Bankruptcy Court of the Confirmation Order.

19.     "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case.

20.     "*Confirmation Hearing*" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to Sections 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

21.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

22.     "*Creditor*" means any Person that is the Holder of any Claim against the Debtor.

23.     "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code, as the same may be reconstituted from time to time.

7

24.      "*Cure Amount*" means all amounts required to be paid to a counterparty to an Executory Contract or unexpired lease to assume such Executory Contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

25.      "*Debtor*" means Namco LLC, as Debtor and Debtor in Possession in the Chapter 11 Case.

26.      "*Debtor-Released Parties*" means, collectively, the Debtor, and its current and former directors, managers, officers, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their capacity as such.

27.      "*DIP Claims*" means the Claims of the DIP Lender that arise pursuant to the final order authorizing, *inter alia*, postpetition financing dated May 7, 2013 (Docket No. 197).

28.      "*DIP Credit Agreement*" means that certain agreement entered into by and between the DIP Lender and the Debtor on March 28, 2013, pursuant to which the DIP Lenders agreed to provide financing to the Debtor and received senior secured, super-priority liens over the Debtor's collateral (as discussed in the DIP Credit Agreement), as amended, modified and restated from time to time.

29.      "*DIP Lender*" means GarMark Partners II LP, as successor in interest to Salus CLO 2012-1, Ltd.

30.      "*Disallowed Claim*" means any Claim against the Debtor which, in whole or in part, (i) has been disallowed by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtor; (iii) has been withdrawn by the Holder thereof; (iv) is listed in the Schedules as a zero amount or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; or (v) is not an Allowed Claim.

31.      "*Disbursing Agent*" means the Reorganized Debtor or any other entity in its capacity as a disbursing agent under the Plan.

32.      "*Disclosure Statement*" means that certain disclosure statement relating to the Plan as such disclosure statement may be amended, modified or supplemented from time to time, and all exhibits and schedules annexed thereto, as prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

33.      "*Disputed Claim*" means (a) any Claim (a) to the extent neither allowed nor disallowed under the Plan or a Final Order nor deemed allowed under section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by the Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for

8

estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in a proof of Claim exceeds the amount of the Claim scheduled by the Debtor as not disputed, contingent or unliquidated.

34. "*Distribution"* means Cash, property, interests in property or other value distributed under the Plan to the Holders of Allowed Claims.

35. "*Distribution Date*" means the Initial Distribution Date or the date every six (6) months subsequent to the Initial Distribution Date, or as soon thereafter as is reasonably practicable, unless the Disbursing Agent determines, in its reasonable discretion, that such Distribution would be economically impracticable.

36. "*Distribution Record Date*" means, for purposes of determining the Holders of Claims entitled to receive Distributions under the Plan on account of such Claims and, to the extent applicable, to vote on the Plan, the Effective Date.

37. "*Effective Date*" means a Business Day selected by the Debtor, on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan specified in Section 12.02 of the Plan shall have been satisfied or waived as provided in Section 12.03 of the Plan, and upon which date the Plan shall be deemed substantially consummated, as defined in section 1101(2) of the Bankruptcy Code.

38. "*Estate*" means the estate of the Debtor created by operation of law on the Petition Date pursuant to section 541 of the Bankruptcy Code.

39. "*Executory Contract*" means a written contract between the Debtor and any other Person entered into prior to and in effect as of the Petition Date under which performance remains due on both sides.

40. "*Existing Equity Interests*" or "*Interests"* means the interest of any holders of equity securities of the Debtor represented by issued and outstanding shares of common or preferred units or other instrument evidencing a present equity interest in the Debtor, whether or not transferable, or any option, warrant, contractual or otherwise to acquire any such interests.

41. "*Exit Facility*" means the exit facility, if any, with terms and conditions which shall be mutually acceptable to the Debtor and the Plan Sponsors consistent with the Plan Term Sheet.

42. "*Exit Facility Agreement*" means a credit agreement, dated on or after the Effective Date, by and among the Reorganized Debtor and the lender or lenders party thereto, as the same may have been subsequently amended, restated, amended and restated, supplemented or otherwise modified from time to time, together with all instruments and agreements related thereto.

43.    "***Exit Facility Lenders***" means the lender or lenders from time to time under the Exit Facility.

44.    "***Fee Claim***" means an Administrative Expense Claim under Sections 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services accrued or rendered or expenses incurred in connection with the Chapter 11 Case on or prior to the Petition Date and prior to the Effective Date.

45.    "***File(d)***" means the act represented by receipt by the Clerk of the Bankruptcy Court in the Chapter 11 Case or such other party as the Bankruptcy Court may direct.

46.    "***Final Order***" means, as applicable, an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

47.    "***For Susan***" means For Susan 2, Inc., a Delaware corporation of which C. Mark Scott is the principal.

48.    "***GarMark***" means GarMark Partners Namco Equity Holdings VI, LLC, a Delaware limited liability company.

49.    "***General Unsecured Claim***" means any Claim against the Debtor that is not an Administrative Expense Claim, Priority Non-Tax Claim, Priority Tax Claim, Senior Lender Claim or a Second Lien Claim.

50.    ***General Unsecured Claim Administrator***" means the individual or entity selected by the Creditors' Committee, reasonably acceptable by the Debtor, whose identity shall be disclosed in the Plan Supplement who, subject to execution of a reasonable and customary confidentiality agreement, shall have the rights set forth in this Plan.

51.    "***General Unsecured Creditors***" means those Creditors holding a General Unsecured Claim.

52.    "***Governmental Unit***" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

53.     "*Governmental Unit Bar Date*" means September 20, 2013 at 4:00 p.m. (prevailing Eastern Time), which is the deadline by which Governmental Units are required to have filed Proofs of Claim.

54.     *"GUC Note"* means a $2,000,000 unsecured note payable over three years to be paid as set forth in Article III herein for the benefit of Allowed General Unsecured Claims.

55.     "*Holder*" means the legal or beneficial holder of a Claim or Interest (and, if used in conjunction with a Class or type of Claim or Interest, means a holder of a Claim or Interest in such Class or of such type).

56.     "*Impaired*" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

57.     "*IRS*" means the Internal Revenue Service.

58.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

59.     *"New Equity Units"* means the equity units of the Reorganized Debtor to be issued by the Reorganized Debtor pursuant to the Plan and with the rights with respect to dividends, liquidation, voting and other matters as are provided for by applicable nonbankruptcy law and in the Amended Operating Agreement.

60.     "*Objection*" means any objection, application, motion, complaint or other legal, equitable or administrative proceeding brought by any party (including arbitration, mediation, summary proceeding, adversary proceeding or other litigation if applicable) seeking to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, avoid, subordinate, estimate or otherwise limit recovery, in whole or in part, with respect to any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

61.     "*Ordinary Course Administrative Expense Claims*" means Administrative Expense Claims against the Debtor that represent liabilities incurred in the ordinary course of business of the Debtor.

62.     "*Person(s)*" means a corporation, governmental unit and person, each as respectively defined in Sections 101(9), (27) and (41) of the Bankruptcy Code, including a natural person, individual, partnership, corporation, or other domestic or foreign entity or organization.

63.     "*Petition Date*" means March 24, 2013, the date upon which the Chapter 11 Case was commenced in the Bankruptcy Court.

64.     "*Plan*" means this first amended chapter 11 plan of reorganization including, without limitation, the exhibits and schedules hereto or contained in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

65.     *"Plan Sponsors"* means GarMark and For Susan.

2161891-1

66.    "***Plan Supplement***" means the supplement to the Plan, to be filed no later than seven days prior to the Confirmation Hearing the Plan (as designated in the order approving the Disclosure Statement), containing certain documents relevant to the implementation of the Plan, which shall be in form and substance reasonably acceptable to the Debtor, the Plan Sponsors and the Creditors' Committee and shall include such exhibits, documents, lists or schedules not Filed with the Plan but as may be Filed in connection therewith.

67.    "***Plan Term Sheet***" means that certain term sheet, dated April 30, 2013, by and between the Debtor, the Second Lien Collateral Agent, the Plan Sponsors and the Committee, setting forth the principal terms and conditions of a proposed restructuring of the Debtor.

68.    "***Priority Non-Tax Claim***" means any Claims entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.

69.    "***Priority Tax Claim***" means any Claims of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

70.    "***Professional***" shall mean any professional retained by Order of the Bankruptcy Court in these Chapter 11 Case in accordance with Sections 327, 328, 330 or 1103 of the Bankruptcy Code.

71.    "***Proof(s) of Claim***" means any proof of claim Filed or that should have been Filed with the Bankruptcy Court in the Case pursuant to Bankruptcy Rules 3001 or 3002, or other order of the Bankruptcy Court.

72.    "***Property***" means, as to the Debtor, any and all assets or property of the Debtor, of any kind, nature or description whatsoever, real or personal, tangible or intangible, as defined in Section 541 of the Bankruptcy Code.

73.    "***Released Parties***" means, collectively, (a) the Debtor-Released Parties; and (b) the Plan Sponsors, the Second Lien Lenders, the collateral agent under the Second Lien Credit Agreement, the Senior Lender, the DIP Lender, and each of their advisors, professionals (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons), affiliates and subsidiaries.

74.    "***Reorganized Debtor***" means the Debtor on and after the Effective Date.

75.    "***Retained Causes of Action***" means any Cause of Action retained by the Reorganized Debtor on the Effective Date.

76.    "***Schedule of Rejected Contracts and Leases***" means a schedule of the contracts and leases to be rejected pursuant to section 365 of the Bankruptcy Code and Section 9.01 of the Plan, which shall be filed by the Debtor in the Plan Supplement or prior to the filing thereof, as such schedule may be amended from time to time on or before the Confirmation Date.

77.    "***Schedules***" means the Schedules, Statements and Lists Filed by the Debtor on May 10, 2013, pursuant to Bankruptcy Code Section 521(1) and Bankruptcy Rule 1007, as they

have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court prior to the entry of the final decree in these Cases.

78.    "***Second Lien Credit Agreement***" means that certain Note and Warrant Purchase Agreement dated as of November 9, 2007 by and among the Debtor as issuer and the Second Lien Lenders as purchasers as was amended by (i) that certain First Amendment and Waiver to Note and Warrant Purchase Agreement, dated as of February 19, 2008, (ii) that certain Second Amendment, Consent and Waiver to Note and Warrant Purchase Agreement, dated as of October 14, 2008, (iii) that certain Third Amendment and Waiver to Note and Warrant Purchase Agreement, dated as of  January 28, 2010, (iv) that certain Fourth Amendment and Waiver to Note and Warrant Purchase Agreement, dated as of December 20, 2010 and (v) that certain Fifth Amendment to Note and Warrant Purchase Agreement, dated as of June 1, 2012.

79.    "***Second Lien Collateral Agent***" means GarMark Advisors II, LLC as collateral agent under the Second Lien Credit Agreement.

80.    "***Second Lien Lenders***" means GarMark Partners II, L.P., M Plus Capital Partners, LP, and M Plus Strategic Partners, LP., and any other lender under the Second Lien Credit Agreement.

81.    "***Second Lien Claims***" mean any and all amounts due any party under the Second Lien Credit Agreement.

82.    "***Second Lien Lender Note***" means a $6,000,000 three (3) year secured note, which shall bear interest, paid quarterly, equal to (a) 8% per annum payable in kind in year one, and (b) 12% per annum payable in cash in all years thereafter, which note shall be secured by a lien on all assets of the Reorganized Debtor

83.    "***Securities Act***" means the Securities Act of 1933, 15 U.S.C. §§ 77(a) *et. seq.*

84.    "***Senior Lender***" means Salus CLO 2012 1, Ltd.

85.    "***Senior Lender Claims***" means Claims of the Senior Lender arising under the Senior Lender Credit Agreement.

86.    "***Senior Lender Credit Agreement***" means the agreement by and between the Senior Lender as lender and the Debtor as borrower dated June 1, 2012 as amended from time to time.

87.    ***Tax(es)***" means any tax, charge, fee, levy, or other assessment by any Governmental Unit, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any Governmental Unit.

88.    "***Unclaimed Property***" means any unclaimed Distribution of Cash or any other Property made pursuant to the Plan to the Holder of an Allowed Claim, including checks that are

either not cashed for ninety (90) days after issuance or which are returned as undeliverable without a proper forwarding address, and any Distribution not delivered because no mailing address was available as of the applicable Distribution Date.

89.    "*Unimpaired Claim*" means any Claim that is not Impaired, within the meaning of section 1124 of the Bankruptcy Code.

90.    "*United States Trustee*" means the United States Trustee for Region 3 appointed under Section 58l(a)(3) of title 28 of the United States Code to serve in the Chapter 11 Case.

91.    "*United States Trustee Fee Claims*" means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

92.    "*Voting Record Date*" means the record date for voting on the Plan that is designated in the order approving the Disclosure Statement.

**Section 1.02.    Interpretation; Application of Definitions and Rules of Construction.**

a.    Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neuter.

b.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.

c.    The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.

d.    The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof

e.    Any term that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).  Without limiting the preceding sentence, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

f.    To the extent that the description of the Plan or any Plan document is inconsistent with the actual terms or conditions of the Plan or any Plan document, the terms and conditions of the Plan or Plan document, as the case may be, shall control.

14

g.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**Section 1.03.        Exhibits.**

Any and all exhibits to the Plan and any documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed. All references to "the Plan" herein shall be construed, where applicable, to include references to this document and any amendments and exhibits hereto, the Plan Supplement and any amendments thereto, and all of their respective exhibits, appendices, schedules and annexes.

Holders of Claims and Interests may inspect a copy of the Plan and related documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or obtain a copy of the Plan and related documents by a written request sent to the following address:

| Via First Class Mail: | Via Hand Delivery/ Overnight Courier: |
|---|---|
| Namco Ballot Processing<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, PO Box 5014<br>New York, NY 10150-5014 | Namco Ballot Processing<br>c/o Epiq Bankruptcy Solutions, LLC<br>757 Third Avenue, 3rd Floor<br>New York, NY 10017 |

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**Section 2.01.        General.**

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**Section 2.02.        Unclassified Claims (Not entitled to vote on the Plan).**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, DIP Claims, United States Trustee Fees, and Priority Tax Claims are not classified.  The treatment accorded Administrative Expense Claims, Fee Claims, DIP Claims, United States Trustee Fees, and Priority Tax Claims is set forth in Section 3.02 of the Plan.

Section 2.03.    **Classification of Claims and Interests.**

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | Senior Lender Claims | No | No (paid in full prior to the Effective Date) |
| Class 3 | Second Lien Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | Existing Equity Interests | Yes | No (Deemed to reject) |

Section 2.04.    **Unimpaired Classes of Claims.**

The following Classes of Claims are Unimpaired and, therefore, deemed to have accepted the Plan and are not entitled to vote on the Plan under section 1126(f) of the Bankruptcy Code.

Class 1: Priority Non-Tax Claims

Class 2: Senior Lender Claims

Section 2.05.    **Impaired Classes of Claims and Interests.**

The following Classes of Claims are Impaired and entitled to vote on the Plan:

Class 3: Second Lien Claims

Class 4: General Unsecured Claims

The following Class of Interests is Impaired and deemed to have rejected the Plan and, therefore, is not entitled to vote on the Plan under section 1126(g) of the Bankruptcy Code:

Class 5: Existing Equity Interests

# ARTICLE III

# TREATMENT OF CLAIMS AND INTERESTS

Section 3.01.    **Satisfaction of Claims and Interests.**

The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against or Interests in the Debtor and the Debtor's Property.

16

2161891-1

**Section 3.02.**       **Treatment of Claims and Interests.**

**a.**       **Provisions for Treatment of Unclassified Claims.**

1.       **Administrative Expense Claims.**

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Debtor shall pay to each Holder of an Allowed Administrative Expense Claim Cash in an amount equal to the amount of such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable and (iii) the date that such Administrative Expense Claim is due in accordance with its terms; *provided, however*, that Allowed Ordinary Course Administrative Expense Claims may be paid by the Debtor or the Reorganized Debtor in the ordinary course of business of the Debtor or the Reorganized Debtor consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

The Confirmation Order or separate bankruptcy court order will establish the Administrative Expense Claims Bar Date for filing applications for the allowance of Administrative Expense Claims (except for Fee Claims, Ordinary Course Administrative Expense Claims, and United States Trustee Claims).  A notice setting forth the Administrative Expense Claim Bar Date shall be filed on the Bankruptcy Court's docket.  Further notice of the Administrative Expense Claims Bar Date shall be provided as may be directed by the Bankruptcy Court.  All requests for payment of an Administrative Expense Claim that accrued on or before the Effective Date (except for Fee Claims and United States Trustee Claims) must be filed with counsel for the Debtor by the Administrative Expense Claim Bar Date.  Any requests for payment of an Administrative Expense Claim (other than Fee Claims and United States Trustee Claims) that are not properly filed and served by the Administrative Expense Claim Bar Date shall be disallowed automatically without the need for any objection from the Debtor or the Reorganized Debtor or any action by the Bankruptcy Court.  The Reorganized Debtor shall have until 120 days after the Administrative Expense Claims Bar Date (or such longer period as may be allowed by order of the Bankruptcy Court) to review and object to all applications for the allowance of Administrative Expense Claims.  Unless the Debtor or the Reorganized Debtor objects to a timely-filed and properly served Administrative Expense Claim, such Administrative Expense Claim shall be deemed Allowed in the amount requested.

2.       **Fee Claims.**

Any entity seeking an award by the Bankruptcy Court of compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall file and serve on the Reorganized Debtor and their counsel, the United States Trustee, counsel to the Creditors' Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, its final application for allowance of such

17

compensation and/or reimbursement by no later than sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtor, the Reorganized Debtor or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Fee Claims must be filed and served on the Reorganized Debtor and their counsel and the requesting party no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which an application for final allowance of such Fee Claims was filed and served.

The Reorganized Debtor shall pay each Holder of an Allowed Fee Claim Cash in an amount equal to the amount of such unpaid Allowed Fee Claim on the date such Fee Claim becomes an Allowed Fee Claim or as soon thereafter as is reasonably practicable.

3.      **United States Trustee Fees**

On the Effective Date or as soon as practicable thereafter, the Debtor or the Reorganized Debtor shall pay all United States Trustee Fees.

4.      **DIP Claims**

On or prior to the Effective Date, the DIP Claims will be indefeasibly paid and satisfied, in full, in Cash, by the Debtor or the Reorganized Debtor, and after the DIP Claims are satisfied, all liens granted to the DIP Lender in connection with the DIP Credit Agreement shall be terminated without further action by the Debtor or the Reorganized Debtor or further order of the Bankruptcy Court.

5.      **Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtor, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code).  All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.  The Reorganized Debtor shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

b.      **Provisions for Treatment of Classified Claims.**

1.      **Class 1 – Priority Non-Tax Claims.**

A.      <u>Treatment</u>. The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim will be paid, in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on the later of the Effective Date and the first Distribution Date subsequent to the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

B.      <u>Voting</u>. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and the votes of such Holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

2.      **Class 2 – Senior Lender Claims**

A.      <u>Allowance</u>.  On the Effective Date, Senior Lender Claims shall be deemed Allowed in the aggregate approximate amount of $9,304,025 as of the Petition Date, plus any accrued interest, fees, and expenses, and less all amounts paid by the Debtor on account of such Allowed Senior Lender Claims prior to the Effective Date.

B.      <u>Treatment</u>.  The Senior Lender Claims have been satisfied in full.

C.      <u>Voting</u>. Class 2 is Unimpaired, and the Holder of the Senior Lender Claims is not entitled to vote to accept or reject the Plan.  In accordance with section 1126(f) of the Bankruptcy Code, the Holder of Senior Lender Claims is conclusively presumed to accept the Plan and the vote of such Holder will not be solicited with respect to such Allowed Senior Lender Claims.

3.      **Class 3 – Second Lien Claims.**

A.      <u>Allowance</u>.  On the Effective Date, Second Lien Claims shall be deemed Allowed in the aggregate amount of $9,256,985.30 as of the Petition Date, plus all reasonable costs and expenses payable thereunder, provided such costs and expenses shall not exceed $250,000.

B.      <u>Treatment</u>.  The Collateral Agent, on behalf of holders of Allowed Second Lien Claims, in full and complete satisfaction, settlement and release of and in exchange for such Allowed Second Lien Claims, on the Effective Date will receive (i) the Second Lien Lender Note, (ii) cash on the effective date equal to the reasonable costs and expenses of the Collateral Agent, and (iii) an Allowed Class 3 General Unsecured claim equal to $3,256,985.30 each of the foregoing subject, in all respects, to the indefeasible payment in full of the DIP Claims and the Senior Lender Claims.  Notwithstanding anything else herein to the contrary, this Plan shall give effect to all subordination, intercreditor, pledge and sharing agreements (together,

19

the "Subordination Agreements") as set forth in section 510 of the Bankruptcy Code, and all payments set forth herein shall be made in accordance with the terms of such Subordination Agreements, and shall be deemed to have been made as set forth above.

        C.    <u>Voting</u>. Class 3 is impaired, and the Holders of Allowed Second Lien Claims are entitled to vote to accept or reject the Plan.

      4.    **Class 4 – General Unsecured Claims.**

        A.    <u>Treatment</u>.  Each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim its pro rata share of (i) the GUC Note which shall be payable over three years from the Effective Date as follows: (a) $500,000 cash distribution on the Effective Date, and (b) in an amount equal to one third of the remaining principal amount of the note on each of the next three anniversaries of the Effective Date thereafter; and (ii) a contingent note in an amount equal to 5% of the net proceeds over $30,000,000 from a sale of the Reorganized Debtor; provided, however, such contingent note shall be payable if and only if the Reorganized Debtor  is sold for more than $30,000,000 within three years of the Effective Date.

        B.    <u>Voting</u>. Class 4 is Impaired, and the Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

      5.    **Class 5 – Existing Equity Interests.**

        A.    <u>Treatment</u>.  Each Holder of the Debtor's Existing Equity Units, as well as any options, warrants or similar instruments derived from or relating to any such common or preferred interests shall not receive or retain any property or interests on account of such interest, and any such interests shall be cancelled and extinguished on the Effective Date.

        B.    <u>Voting</u>. In accordance with section 1126(g) of the Bankruptcy Code, the Holders of the Debtor's Existing Equity Units are conclusively presumed to reject the Plan and the votes of such Holders will not be solicited with respect to such Existing Equity Units.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**Section 4.01.**    **Each Impaired Class Entitled to Vote Separately**

Each Impaired Class of Claims that is to receive a Distribution under the Plan will be entitled to vote separately to accept or reject the Plan.  Except as provided herein, each Person that, as of the Voting Record Date, holds a Claim in an Impaired Class will receive a Ballot that will be used to cast its vote to accept or reject the Plan.  In the event of a controversy as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

20

**Section 4.02.        Acceptance by a Class of Claims**

An Impaired Class of Claims will be deemed to accept the Plan if the Plan is accepted by the Holders of Claims in such Class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

**Section 4.03.        Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown"**

Because certain Classes are deemed to have rejected the Plan, the Debtor will seek confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtor, with the consent of the Plan Sponsors and the Creditors' Committee (and, to the extent its Claims have not been fully satisfied, the DIP Lender) which consent shall not be unreasonably withheld, reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**Section 4.04.        Elimination of Vacant Classes.**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS OF PLAN IMPLEMENTATION

**Section 5.01.        Introduction**

The Plan will be implemented through a restructuring of the Debtor's debt obligations. The Existing Equity Interests will be canceled and New Equity Units will be issued to the Plan Sponsors in exchange for working capital commitments of up to $3,000,000.  General Unsecured Creditors will each receive a distribution on account of their Allowed Claims, as discussed in Article III.  The following discussion outlines the general terms of the contemplated reorganization of the Debtor and certain actions that will be taken to close the transactions contemplated by the Plan.

**Section 5.02.        Corporate Action Non-Voting Securities.**

On and after the Effective Date, the Reorganized Debtor shall have full authority and is authorized to take such actions and execute such documents as may be necessary to effectuate the transactions provided for in the Plan, including, without limitation, (i) assumption and rejection of Executory Contracts and unexpired leases, (ii), subject to the Amended Operating Agreement, selection of the managers and officers of the Reorganized Debtor, (iii) the execution and entry into the Exit Facility Agreement, and (iv) the issuance and distribution of the New

21

Equity Units.  The Reorganized Debtor's post-Effective Date authority shall further include, without limitation, the right to operate its business as a going concern; to purchase and/or sell assets; to commence and prosecute actions and proceedings; to open, maintain and close bank accounts and/or other investments; to make and File Objections to, or otherwise contest the amount, validity and/or priority of, all Claims; to calculate and make Distributions consistent with the Plan; to prosecute and resolve Objections regarding all Claims; to engage in arbitration or mediation; to engage or retain Professionals and to pay the fees and disbursements thereof; to file tax information and returns as required and, in connection therewith, to make such determinations of tax liability, challenge assessments, make tax elections, pay taxes and take other, related actions; to hold and dispose of any unclaimed Distributions; and to close the case and any related proceedings.

On and after the Effective Date, the Reorganized Debtor is authorized to, and may direct an officer to, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of the Reorganized Debtor without the need for any approvals, authorizations, or consents except for those required pursuant to the Plan.

### Section 5.03.    Effective Date Transactions

### a.    Issuance of the New Equity Units

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor shall authorize the issuance of the New Equity Units according to the distribution schedule set forth in the Plan Supplement.  The issuance of the New Equity Units is authorized without the need for any further corporate action or any further action by any Holder of Claims or Interests.

All of the New Equity Units issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.

### b.    Exit Facility

On the Effective Date, the Reorganized Debtor shall be authorized, but not required, to enter into the Exit Facility. Confirmation shall be deemed approval of the Exit Facility, if any, (including the transactions contemplated thereby, such as any supplemental or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for the Reorganized Debtor to enter into and execute the Exit Facility, if any, and such other documents as the Exit Facility Lenders may require, subject to such modifications as the Reorganized Debtor may deem to be reasonably necessary to consummate the Exit Facility.  The Reorganized Debtor may use the Exit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

**Section 5.04.        Securities Registration Exemption**

The New Equity Units are to be issued pursuant to the Plan without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code..  The Reorganized Debtor Common Units to be issued pursuant to the Plan are to be issued by the Reorganized Debtor without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.  To the extent section 1145 of the Bankruptcy Code is inapplicable, the issuance of the New Equity Units shall be exempt from registration under the Securities Act or any similar federal, state or local law in reliance on the exemption set forth in section 4(2) of the Securities Act or Regulation D promulgated thereunder.

**Section 5.05.        Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided in the Plan or the Confirmation Order or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in the Debtor's Estate, including the Retained Causes of Action, and any property acquired by any of the Debtor pursuant to the Plan shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances (other than the liens associated with the Second Lien Lender Note and the Exit Facility).  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.06.        Corporate Governance**

On and after the Effective Date, (i) the Board of Managers of the Reorganized Debtor shall consist of members to be determined by Plan Sponsors and as disclosed in the Plan Supplement, and (ii) the Reorganized Debtor shall be managed in accordance with the Amended Operating Agreement.

**Section 5.07.        Cancellation of Existing Securities and Agreements**

On the Effective Date, the Existing Equity Interests in the Debtor shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  Similarly, on the Effective Date, except (a) as otherwise specifically provided for in the Plan with respect to Executory Contracts or unexpired leases that have been assumed by the Debtor, with respect to any Claim that is Allowed under the Plan, on the Effective Date, any instruments or documents evidencing any Claims or Interests shall be deemed automatically canceled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Interests, as the case may be, shall be discharged; *provided*, *however*, that such instruments or documents shall continue in effect solely for the purpose of (x) allowing the Holders of such Allowed Claims to receive their Distribution under the Plan, and (y) allowing the Disbursing Agent to make such Distributions to made on account of such Allowed Claims;

23

*provided, further, however*, that the preceding provisions shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or otherwise result in any expense or liability to the Reorganized Debtor.

### Section 5.08.      Obligations Incurred After the Effective Date

Payment obligations incurred after the Effective Date, including, without limitation, the professional fees of the Debtor and professionals of the Creditors' Committee solely with respect to the prosecution of their final fee applications, will not be subject to application or proof of claim and may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.

### Section 5.09.      General Unsecured Claims Administrator

The General Unsecured Claims Administrator shall be responsible for monitoring the GUC Note payments, distributions under the Plan to Holders of Allowed General Unsecured Claims, and the allowance and resolution of General Unsecured Claims.

Commencing six months after the Effective Date and thereafter until the GUC Note is paid in full, the General Unsecured Claims Administrator shall receive reporting every six (6) months in the form of the Reorganized Debtor's sales, gross margins and EBITDA for the year-to-date period, and, with the exception of any Distribution occurring on or about or prior to the Effective Date, at least ten (10) business days' notice prior to any Distribution required to be made under the Plan.

The General Unsecured Claims Administrator shall be compensated by the Reorganized Debtor at the fixed amount of $20,000 and shall be entitled to look to the GUC Note proceeds for any additional fees and costs incurred in excess of $20,000.  The General Unsecured Claims Administrator shall serve until the later of (i) three years from the Effective Date; or (ii) the final Distribution Date with respect to Allowed General Unsecured Claims (the "Termination Date"). Ninety-one (91) days after the Termination Date, the General Unsecured Claims Administrator shall be discharged and relieved of all duties under the Plan.  If the General Unsecured Claims Administrator shall become unable to serve or resigns prior to the Termination Date, the Reorganized Debtor shall elect an alternate General Unsecured Claims Administrator.

### Section 5.10.      Post-Confirmation Operating Reports and United States Trustee Fees.

The Reorganized Debtor shall be responsible for the preparation and filing of operating reports until entry of a final decree in this case.  Quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest thereon shall be paid by the Reorganized Debtor until the entry of an order converting, dismissing or granting a final decree in this case.

24

## ARTICLE VI

## PRESERVATION AND PROSECUTION OF CAUSES OF ACTION HELD BY THE DEBTOR

**Section 6.01.**        **Release of Avoidance Actions**

On the Effective Date, the Debtor shall release any and all Avoidance Actions and the Debtor and the Reorganized Debtor, and any of their successors or assigns.  Any Entity acting on behalf of the Debtor or the Reorganized Debtor shall be deemed to have waived the right to pursue any and all Avoidance Actions.   No Avoidance Actions shall revert to creditors of the Debtor.

**Section 6.02.**        **Preservation and Prosecution of Causes of Action.**

As of the Effective Date, the Debtor shall waive and shall be deemed to have waived all Avoidance Actions, all Claims against Released Parties  to the extent set forth in Article X of this Plan and all other claims and causes of action specifically set forth in this Plan; provided, however, the Debtor and the Reorganized Debtor shall reserve the right to assert such actions, except for Avoidance Actions, as a defense to the allowance of a claim, upon consultation with the Creditor's Committee.  All Claims and Causes of Action, with the exception of Avoidance Actions and Claims against Released Parties, are preserved.  The Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action.  The Reorganized Debtor's right to commence, prosecute, settle, or abandon their Retained Causes of Action shall be preserved, notwithstanding the occurrence of the Effective Date.  No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtor will not pursue any and all available Retained Causes of Action against them.  Unless any Retained Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all Retained Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation Order.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action against any entity shall vest in the Reorganized Debtor.

Except as explicitly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any rights, claims or causes of action, rights of setoff, or other legal or equitable defenses that the Debtor or the Reorganized Debtor may have (not including, for avoidance of doubt, any cause of action to avoid a transfer under sections 303(c), 544, 547, 548 or 553(b) of the Bankruptcy Code, or any similar state law), or which the Reorganized Debtor may choose to assert on behalf of the Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person or entity, to the extent

25

such Person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor or the Reorganized Debtor,  and (ii) the turnover of any property of the Debtor's Estate.

Except as explicitly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release or relinquishment of any rights, claims or causes of action, rights of setoff, or other legal or equitable defenses (not including, for avoidance of doubt, any cause of action to avoid a transfer under sections 303(c), 544, 547, 548 or 553(b) of the Bankruptcy Code, or any similar state law) that the Debtor had immediately prior to the Petition Date against or with respect to any Claim left Unimpaired.  The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Retained Causes of Action, rights of setoff and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced.

The Reorganized Debtor reserves and shall retain the foregoing Retained Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or unexpired lease during the Chapter 11 Case or pursuant to the Plan.

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

### Section 7.01.      Objections to Claims

Subject to the consultation and monitoring rights of the General Unsecured Claims Administrator in Section 5.09 above with respect to General Unsecured Claims only, as of the Effective Date, the Reorganized Debtor will have the authority to file, settle, compromise, withdraw or litigate to judgment any objections to the allowance of General Unsecured Claims, other than Claims expressly Allowed under the Plan, on all available grounds, together with all defenses of the Debtor and its Estate, including, without limitation, the defense of setoff as may be necessary within the reasonable judgment of the Reorganized Debtor.   At the request of the General Unsecured Claims Administrator, the Reorganized Debtor shall file any objections to General Unsecured Claims as the General Unsecured Claims Administrator may reasonably determine is necessary.  The Reorganized Debtor shall have the authority to file, settle, withdraw or litigate to judgment any objections to the allowance of Administrative Claims, Priority Tax Claims and Other Priority Claims, with respect to which it disputes liability, priority, and/or amount.  All objections, affirmative defenses, and counterclaims shall be litigated to Final Order; *provided, however,* that the Reorganized Debtor shall have authority to file, settle, compromise or withdraw any objections to Claims.  Any Objections to Claims that have been filed on or before the Confirmation Date, shall be served and filed as soon as practicable, but, in each instance, no later than: (a) 180 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof.  The Filing of a motion to extend such objection deadline shall automatically extend such deadline until a Final Order is entered on such motion.  In the event that such a motion to extend the objection deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, such objection deadline shall be the later of the current deadline (as

26

previously extended, as applicable) or 30 days after entry of a Final Order denying the motion to extend the objection deadline.

> **Section 7.02.** **No Payment or Distribution Pending Allowance.**

Notwithstanding any other provision in the Plan, if any portion of a Claim is a Disputed Claim, no payment or Distribution of Property provided for hereunder shall be made on account of such Claim unless and until the Disputed Claim becomes an Allowed Claim.  To the extent a Disputed Claim is Disallowed in whole or in part, the Holder of such Claim will not receive any Distribution on account of the portion of such Claim (including the whole, if applicable) that is Disallowed.

> **Section 7.03.** **Estimation.**

The Reorganized Debtor shall have the right, but not the obligation, at any time to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of a Disputed Claim and the United States Trustee, and which hearing may be held on an expedited basis), estimating for final Distribution purposes any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court, *provided*, *however*, that if the estimate constitutes the maximum limitation on such Claim, the Debtor or the Reorganized Debtor may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim.  On or after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

## ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN

> **Section 8.01.** **Limitation to Full Recovery**

Notwithstanding anything herein to the contrary, no Holder of any Claim will be entitled to a Distribution in excess of 100% of the Allowed amount of its Claim.

> **Section 8.02.** **Disbursing Agent**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent will be the Reorganized Debtor or its agent, and shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  The Disbursing Agent need not apply to the Bankruptcy Court for the payment of any fees or expenses from the Reorganized Debtor.

### Section 8.03.    Timing of Distributions.

Distributions under the Plan shall be made (i) as set forth in the Plan or as soon as reasonably practicable thereafter; or (ii) as agreed between the Debtor or the Reorganized Debtor, as applicable, and the particular Creditor, or as soon as reasonably practicable thereafter.

### Section 8.04.    Saturdays, Sundays, or Legal Holidays.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

### Section 8.05.    Distribution Record Date.

Except as otherwise provided in a Final Order that is not subject to any stay, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 and Filed with the Bankruptcy Court on or prior to the Distribution Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date.  As of the close of business on the Distribution Record Date, any transfer ledgers, transfer books, registers and any other records will be closed and, for purposes of the Plan, there shall be no further changes in the record Holders of such Claims.  The Debtor shall have no obligation to recognize the transfer of any Claim occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with those Holders of Claims and Interests as of the close of business on the Distribution Record Date, as reflected on the ledgers, books, registers or records of the Debtor and the Bankruptcy Court.

### Section 8.06.    Delivery of Distributions.

Subject to the treatment of Disputed Distributions as set forth in Article VII of the Plan, Distributions shall be made to Holders of Allowed Claims at the addresses set forth on the Debtor's books and records or the Proofs of Claim, if any, Filed by such Creditors or at the last known addresses of such Creditors or, in the case of transferred Claims, on the notice of transfer Filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3001, each as of the Distribution Record Date.  If any such Creditor's Distribution is returned as undeliverable, no further Distribution shall be made to such Creditor unless and until the Debtor are notified of such Creditor's then-current address, at which time any missed Distribution shall be made to such Creditor to the extent of available Cash; *provided* that in no event is the Debtor required to make Distributions to a Creditor whose Distribution is returned as undeliverable and becomes Unclaimed Property (as discussed in section 8.07 hereof).

### Section 8.07.    Method of Cash Distributions.

The Disbursing Agent shall make all Distributions contemplated by the Plan.  Any Cash payment to be made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Disbursing Agent.  If a Creditor holds

more than one Claim in any one Class, all Allowed Claims of the Creditor in that Class may, at the Debtor's option, be aggregated and one Distribution may be made with respect thereto.

### Section 8.08.    Unclaimed Property.

All Property distributed on account of Claims must be claimed within the later of ninety (90) days after (i) the Distribution Date and (ii) the date such Distribution is made to such Holder *provided, however*, in the case of a Distribution made in the form of a check, must be negotiated or a request for reissuance made directly to the Debtor by the Creditor that was originally issued such check and shall be made within ninety (90) days after the date the Distribution is made to the applicable Creditor.  Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim, other than as provided herein.  Pursuant to Bankruptcy Code sections 347(b) and 1143, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed is forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor or the Estate.

Unclaimed Property of a particular Creditor shall be distributed to Holders of Allowed Claims in the same Class as such Creditor on the next applicable Distribution Date on a pro rata basis.  Notwithstanding anything to the contrary herein, the Reorganized Debtor is not obligated to make any additional distributions if it is determined, in consultation with the GUC Administrator, that there is insufficient Distributable Cash to make a cost-effective distribution, taking into account the size of the distribution to be made and the number of recipients of such distribution, in which event, any remaining funds shall be distributed to a charitable organization to be chosen at the reasonable discretion of the GUC Administrator.

### Section 8.09.    Compliance with Tax Requirements.

In connection with each Distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Debtor shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such Distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtor within thirty (30) days from the date of any such request, the Debtor may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such Distribution until the information is received.

### Section 8.10.    Setoffs.

Except as otherwise provided in the Plan, the Confirmation Order, or in an agreement approved by a Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor, as applicable, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), setoff against any Distribution amounts related to any Claim before any Distribution is made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtor, the Estate or the Reorganized Debtor may hold against the Holder of such Claim, *provided, however,* that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other act or omission of the Debtor or the Disbursing Agent, nor any provision of

the Plan (other than Article X of the Plan) will constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, rights or causes of action that the Debtor or the Reorganized Debtor may possess against such Holder.  To the extent the Debtor or the Reorganized Debtor fail to set off against a Holder and seeks to collect a claim from such Holder after a Distribution to such Holder has been made pursuant to the Plan, the Reorganized Debtor, if successful in asserting such claim, will be entitled to full recovery on the Claim against such Holder.

**Section 8.11.  Documentation Necessary to Release Lien.**

Each Creditor who is a Holder of a Lien satisfied, discharged and released under the Plan and who is to receive a Distribution under the Plan, following the receipt of such Distribution, shall deliver any documents necessary to release all Liens arising under any applicable security agreement or non-bankruptcy law (in recordable form, if appropriate) in connection with such Claim and such other documents as the Debtor or Reorganized Debtor may reasonably request to document satisfaction of the Lien, provided however, that Debtor or Reorganized Debtor, as applicable, will bear the reasonable costs of the DIP Lender in connection with such release of their Liens if any.

**Section 8.12.  Distributions Under Twenty-Five Dollars**

No Distribution of Cash in an amount of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any Holder of an allowed Claim in the aggregate.  In the case of Distributions to Allowed General Unsecured Claims, no interim Distribution shall be made in an amount of less than twenty-five dollars ($25.00), provided however that the amount of such interim Distributions less than twenty-five dollars ($25.00) shall be credited towards future interim or final Distributions.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS

**Section 9.01.  General Treatment.**

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all Executory Contracts and unexpired leases to which the Debtor is a party shall be deemed assumed, except for any Executory Contracts or unexpired leases that: (a) previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (b) are designated specifically or by category as a contract or lease to be rejected on the Schedule of Rejected Contracts and Leases, if any; or (c) are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date.  Any Schedule of Rejected Contracts and Leases may be revised by the Debtor, with the consent of the Plan Sponsors, to and including the Confirmation Date.  As of and subject to the occurrence of the Effective Date, all contracts identified on the Schedule of Rejected Contracts and Leases shall be deemed rejected.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections

pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise specified in writing, each Executory Contract and unexpired lease to be assumed or rejected shall include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract and unexpired lease.  Each Executory Contract and unexpired lease assumed pursuant to this Section 9.01 shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

**Section 9.02.**     **Cure and Cure Objections.**

(a)     Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or unexpired lease, any monetary defaults arising under each Executory Contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "Cure Amount") in Cash on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which the Cure Amount has been resolved (either consensually or through judicial decision).

(b)     No later than the date of the filing of the Plan Supplement, the Debtor shall file and serve a schedule (the "Cure Schedule") setting forth the Cure Amount, if any, for each Executory Contract or unexpired lease to be assumed pursuant to this Article IX of the Plan.  The Cure Amount for any Executory Contract or unexpired lease not on the Cure Schedule shall be zero.  Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within twenty (20) days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c)     Any party wishing to object to the assumption of any Executory Contract or unexpired lease hereunder must follow the instruction described in the Order approving the Disclosure Statement and include a copy of the Executory Contract or unexpired lease to which such objection relates or contain information in detail such that the Debtor may readily identify such Executory Contract or unexpired lease.  Any counterparty that does not object to the assumption of the Executory Contract or unexpired lease under the Plan shall be deemed to have consented to such assumption.

(d)     In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption.  To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may, but is not required to, assume the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Debtor reserves Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated

31

by the Bankruptcy Court).  To the extent a Cure Dispute relates to the Debtor's ability to assume the Executory Contract or unexpired lease, the Debtor or the Reorganized Debtor (as the case may be) may, with the consent of the Plan Sponsors, move such Executory Contract or unexpired lease to the Schedule of Rejected Contracts and Leases within two Business Days following the entry of the Final Order with respect to the Cure Dispute.

### Section 9.03.        Assumption Conditioned upon Consummation of The Plan.

The Plan seeks to cause the Debtor and the Reorganized Debtor to assume the relevant contracts on the Effective Date to the extent, and only to the extent, that such contracts or leases constitute Executory Contracts or unexpired leases.  Additionally, unless the assumption, or assumption and assignment, of an assumed contract is expressly approved by a Final Order of the Bankruptcy Court that provided otherwise, the assumption of each contract by the Debtor or the Reorganized Debtor is expressly conditioned upon the occurrence of the Effective Date.  If the Effective Date does not occur, assumption of the contracts as provided in the Plan will not be effective, and the Debtor will retain all of its rights under section 365 of the Bankruptcy Code with respect to such contracts and leases.

### Section 9.04.        Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an Executory Contract or unexpired lease pursuant to Article IX of the Plan must be filed with the Bankruptcy Court and served upon the Debtor (or, on and after the Effective Date, the Reorganized Debtor) no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such Executory Contract or unexpired lease, and (ii) notice of entry of the Confirmation Order.  Such Claims shall be treated as General Unsecured Claims.  All such Claims not filed within such time will be forever barred from assertion against the Debtor and its Estate or the Reorganized Debtor and its Property.

Nothing set forth herein shall be deemed to extend any deadline or bar date for the filing of rejection damages claims that were established by any prior Order of this Court.

### Section 9.05.        Treatment of Rejection Claims.

Any Allowed Claim arising out of the rejection of an Executory Contract or unexpired lease pursuant to the Plan (as opposed to a separate order of the Bankruptcy Court) shall, pursuant to section 502(g) of the Bankruptcy Code, be a General Unsecured Claim.

### Section 9.06.        Reinstatement and Continuation of Insurance Policies.

Unless otherwise assumed during the pendency of the Chapter 11 Case, from and after the Effective Date, each of the Debtor's insurance policies in existence on and as of the Confirmation Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any entity, including, without limitation, the insurer under any of the Debtor's insurance policies.

The Debtor's discharge and release from all Claims and Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor, the Reorganized Debtor, or any other person or entity.

## ARTICLE X

## EFFECT OF CONFIRMATION

### Section 10.01.      Binding Effect.

The Plan shall be binding and inure to the benefit of the Debtor, all Holders of Claims and Interests, and their respective successors and assigns.

### Section 10.02.      Continued Corporate Existence.

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a separate legal entity, pursuant to the laws of the State of Delaware and the terms of the Amended Operating Agreement.

### Section 10.03.      Vesting of Property.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Property of the Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other Interests, except as provided herein or in the Confirmation Order.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

### Section 10.04.      Discharge of Claims Against and Interests in the Debtor.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a Holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest and any affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such Holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor.

### Section 10.05.      Injunction Against Interference With Plan.

Upon the entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents,

officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**Section 10.06.    Injunction.**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR SUCH OTHER ORDER OF THE BANKRUPTCY COURT THAT MAY BE APPLICABLE, AS OF THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR OR ITS ESTATE THAT ARE DISCHARGED PURSUANT TO THE PLAN ARE, WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS, PERMANENTLY ENJOINED  FROM AND AFTER THE EFFECTIVE DATE FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) ON ANY SUCH CLAIM OR INTEREST AGAINST OR AFFECTING THE DEBTOR, THE REORGANIZED DEBTOR, THE ESTATE, OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (II) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE ESTATE, OR ANY OF THE DEBTOR'S PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (III) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE ESTATE, OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS; (IV) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW; AND (V) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS, OR OBTAINING BENEFITS, PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.  SUCH INJUNCTION SHALL EXTEND TO ALL SUCCESSORS OF THE DEBTOR AND DEBTOR IN POSSESSION, AND THE CREDITORS' COMMITTEE AND ITS RESPECTIVE MEMBERS AND THE PLAN SPONSORS, THE SENIOR LENDER AND THE DIP LENDER.

**Section 10.07.    Releases.**

(A)    EACH CREDITOR WHO VOTES TO ACCEPT THE PLAN AND DOES NOT OPT OUT OF THE PLAN RELEASE BY COMPLETING ITEM 3 OF THE APPLICABLE BALLOT FOR ITSELF AND EACH OF ITS RESPECTIVE TRUSTEES, AFFILIATES, PREDECESSORS, SUCCESSORS, ASSIGNS, EMPLOYEES, AGENTS, ATTORNEYS, LEGAL REPRESENTATIVES, PROFESSIONALS, PARENTS, SUBSIDIARIES, EQUITY HOLDERS, MEMBERS, OFFICERS, DIRECTORS, MANAGERS AND ANY OTHER PERSON ACTING FOR OR ON BEHALF OF IT (COLLECTIVELY, THE "RELEASING PARTIES"), RELEASES, ACQUITS AND FOREVER DISCHARGES EACH OF THE RELEASED PARTIES AND EACH OF THEIR RESPECTIVE TRUSTEES, AFFILIATES, PREDECESSORS, SUCCESSORS, ASSIGNS, EMPLOYEES, AGENTS, ATTORNEYS, LEGAL REPRESENTATIVES, PROFESSIONALS, PARENTS, SUBSIDIARIES, EQUITY HOLDERS, MEMBERS, OFFICERS, DIRECTORS, MANAGERS AND ANY OTHER PERSON ACTING FOR OR ON BEHALF OF IT  OF AND FROM ANY AND ALL CLAIMS, LIABILITIES, DEMANDS, DAMAGES, ACTIONS, CAUSES OF ACTION, RIGHTS, COSTS, LOSSES, EXPENSES, ADVERSE CONSEQUENCES, DEBTS, DEFICIENCIES, DIMINUTION IN VALUE, LIENS, AMOUNTS PAID IN SETTLEMENT, DISBURSEMENTS, COMPENSATION AND SUITS AT LAW OR IN EQUITY, OF WHATSOEVER KIND OR NATURE, IN EACH CASE, THAT ANY OF THE RELEASING PARTIES EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE BECAUSE OF ANYTHING HERETOFORE DONE, OMITTED, SUFFERED, OR ALLOWED TO BE DONE BY ANY OF THE RELEASED PARTIES, WHETHER FORESEEN OR UNFORESEEN, FIXED OR CONTINGENT, DIRECT, INDIRECT OR DERIVATIVE, ASSERTED OR UNASSERTED, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, OR WHETHER KNOWN OR UNKNOWN, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR BREACH OF CONTRACT OR ANY INTERFERENCE WITH CONTRACT, AND ANY DAMAGES AND THE CONSEQUENCES THEREOF RESULTING FOR ANY REASON WHATSOEVER, IN EACH CASE TO THE EXTENT ARISING PRIOR TO THE EFFECTIVE DATE IN CONNECTION WITH THE SENIOR LENDER CREDIT AGREEMENT, THE SECOND LIEN CREDIT AGREEMENT, THE EXISTING EQUITY INTERESTS, THE DIP CREDIT AGREEMENT, THE PLAN, OR THE CHAPTER 11 CASE (ALL OF THE FOREGOING, COLLECTIVELY, THE "RELEASED MATTERS").  NO RELEASING PARTY SHALL COMMENCE, AID OR PARTICIPATE IN (EXCEPT TO THE EXTENT REQUIRED BY ORDER OR LEGAL PROCESS ISSUED BY A COURT OR GOVERNMENTAL AGENCY OF COMPETENT JURISDICTION) ANY LEGAL ACTION OR OTHER PROCEEDING BASED IN WHOLE OR IN PART, DIRECTLY OR INDIRECTLY, UPON THE RELEASED MATTERS.  THIS RELEASE SHALL APPLY TO ALL UNKNOWN OR UNANTICIPATED RESULTS OF ANY ACTION OF ANY RELEASED PARTY OR THE DEBTOR WITH RESPECT TO THE RELEASED MATTERS, AS WELL AS THOSE KNOWN AND ANTICIPATED.

(B)    THE DEBTOR RELEASED PARTIES, FOR THEMSELVES, AND THEIR TRUSTEES, AFFILIATES, PREDECESSORS, SUCCESSORS, ASSIGNS, EMPLOYEES, AGENTS, ATTORNEYS, LEGAL REPRESENTATIVES, PROFESSIONALS, PARENTS, SUBSIDIARIES, EQUITY HOLDERS, MEMBERS, OFFICERS, DIRECTORS,

MANAGERS AND ANY OTHER PERSON ACTING FOR OR ON BEHALF OF IT , RELEASES, ACQUITS AND FOREVER DISCHARGES EACH OF THE RELEASED PARTIES AND THE DEBTOR'S (IMMEDIATELY PRIOR TO THE RESTRUCTURING) REPRESENTATIVES, PROFESSIONALS, PARENTS, SUBSIDIARIES, EQUITY HOLDERS, MEMBERS, OFFICERS, DIRECTORS, MANAGERS AND ANY OTHER PERSON ACTING FOR OR ON BEHALF OF IT (COLLECTIVELY, THE "COMPANY REPRESENTATIVE RELEASED PARTIES" AND TOGETHER WITH THE RELEASED PARTIES, THE "COMPANY RELEASED PARTIES") OF AND FROM ANY AND ALL CLAIMS, LIABILITIES, DEMANDS, DAMAGES, ACTIONS, CAUSES OF ACTION, RIGHTS, COSTS, LOSSES, EXPENSES, ADVERSE CONSEQUENCES, DEBTS, DEFICIENCIES, DIMINUTION IN VALUE, LIENS, AMOUNTS PAID IN SETTLEMENT, DISBURSEMENTS, COMPENSATION AND SUITS AT LAW OR IN EQUITY, OF WHATSOEVER KIND OR NATURE, IN EACH CASE, THAT ANY OF THE DEBTOR RELEASED PARTIES EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE BECAUSE OF ANYTHING HERETOFORE DONE, OMITTED, SUFFERED, OR ALLOWED TO BE DONE BY ANY OF THE COMPANY RELEASED PARTIES, WHETHER FORESEEN OR UNFORESEEN, FIXED OR CONTINGENT, DIRECT, INDIRECT OR DERIVATIVE, ASSERTED OR UNASSERTED, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, OR WHETHER KNOWN OR UNKNOWN, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR BREACH OF CONTRACT OR ANY INTERFERENCE WITH CONTRACT, AND ANY DAMAGES AND THE CONSEQUENCES THEREOF RESULTING FOR ANY REASON WHATSOEVER, IN EACH CASE TO THE EXTENT ARISING PRIOR TO THE EFFECTIVE DATE IN CONNECTION WITH THE OPERATIONS AND MANAGEMENT OF THE DEBTOR AND EACH OF THE SENIOR LENDER CREDIT AGREEMENT, THE DIP CREDIT AGREEMENT, THE SECOND LIEN CREDIT AGREEMENT, AND THE EXISTING EQUITY INTERESTS, ALL OF THE FOREGOING, COLLECTIVELY, THE "COMPANY RELEASED MATTERS"). NO COMPANY RELEASING PARTY SHALL COMMENCE, AID OR PARTICIPATE IN (EXCEPT TO THE EXTENT REQUIRED BY ORDER OR LEGAL PROCESS ISSUED BY A COURT OR GOVERNMENTAL AGENCY OF COMPETENT JURISDICTION) ANY LEGAL ACTION OR OTHER PROCEEDING BASED IN WHOLE OR IN PART, DIRECTLY OR INDIRECTLY, UPON THE COMPANY RELEASED MATTERS. THIS RELEASE SHALL APPLY TO ALL UNKNOWN OR UNANTICIPATED RESULTS OF ANY ACTION OF ANY COMPANY RELEASED PARTY TAKEN IN RESPECT OF THE COMPANY RELEASED MATTERS, AS WELL AS THOSE KNOWN AND ANTICIPATED.

IT IS THE DEBTOR'S POSITION THAT ENTRY OF THE CONFIRMATION ORDER WILL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, WILL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT SUCH RELEASE IS (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR AND THE OTHER RELEASED PARTIES, REPRESENTING GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED HEREIN; (II) IN THE

BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS; (III) FAIR, EQUITABLE, AND REASONABLE; (IV) APPROVED AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (V) A BAR TO ANY RELEASED CLAIM AGAINST THE DEBTOR AND THE RELEASED PARTIES AND THE COMPANY RELEASED PARTIES OR THEIR RESPECTIVE PROPERTY

> **Section 10.08.** **Exculpation and Limitation of Liability.**

TO THE EXTENT PERMITTED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE, NONE OF THE DEBTOR, THE REORGANIZED DEBTOR, THE DISBURSING AGENT, THE SENIOR LENDER, THE DIP LENDER, THE SECOND LIEN LENDER, THE CREDITORS' COMMITTEE, THE PLAN SPONSORS AND ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, ATTORNEYS, CONSULTANTS, ADVISORS, AND AGENTS (BUT SOLELY IN THEIR CAPACITIES AS SUCH) SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF ANY CLAIM OR INTEREST FOR ANY ACT OR OMISSION UP TO AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE DEBTOR'S RESTRUCTURING AND THE CHAPTER 11 CASE, INCLUDING WITHOUT LIMITATION THE NEGOTIATION AND EXECUTION OF THE PLAN, THE CHAPTER 11 CASE, THE DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES FOR AND THE PURSUIT OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, INCLUDING, WITHOUT LIMITATION, ALL DOCUMENTS ANCILLARY THERETO, ALL DECISIONS, ACTIONS, INACTIONS AND ALLEGED NEGLIGENCE OR MISCONDUCT RELATING THERETO AND ALL PREPETITION ACTIVITIES LEADING TO THE PROMULGATION AND CONFIRMATION OF THE PLAN EXCEPT FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT. ANY OF THE FOREGOING PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

> **Section 10.09.** **Injunction Related to Releases and Exculpation.**

EXCEPT AS PROVIDED IN THE PLAN, THE CONFIRMATION ORDER SHALL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED PURSUANT TO THE PLAN, INCLUDING BUT NOT LIMITED TO THE CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED IN ARTICLE X OF THE PLAN.

> **Section 10.10.** **Administrative Expense Claims Incurred After the Confirmation Date.**

Administrative Expense Claims incurred by the Reorganized Debtor after the Confirmation Date, including (without limitation) Claims for Professionals' fees and expenses

incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without the need for approval of the Bankruptcy Court.

**Section 10.11.     Term of Injunctions or Stays.**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date and thereupon shall be deemed to have expired or been superseded by the Injunctions set forth in the Plan.

## ARTICLE XI

## RETENTION OF JURISDICTION

**Section 11.01.     Exclusive Jurisdiction of Bankruptcy Court.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case, the Plan and the Confirmation Order to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(i) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance or priority of any Claim and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim;

(ii) Grant or deny any applications for allowance of compensation or reimbursement of expenses for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii) Hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed on or commenced after the Effective Date, including proceedings with respect to the rights of the Estate to recover Property under sections 542 or 543 of the Bankruptcy Code;

(iv) Determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(v) Ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

2161891-1

(vi) Following the Effective Date and consistent with section 1142 of the Bankruptcy Code, construe, take any action and issue such orders as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Estate following consummation in accordance with sections 524 and 1141 of the Bankruptcy Code;

(vii) Determine and resolve any case, controversy, suit or dispute that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order, including the indemnification, release and injunction provisions set forth in the Plan, or any Person's rights arising under or obligations incurred in connection therewith;

(viii) Determine and resolve any case, controversy, suit or dispute that may arise relating to the GUC Administrator, the GUC Note, distributions to Class 4 General Unsecured Claims, or implementation of the provisions of the Plan relating to Class 4 General Unsecured Claims;

(ix) Modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and the Plan or modify the Plan Summary, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Summary or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Plan Summary, the Confirmation Order;

(x) Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(xi) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xii) Determine any other matters that may arise in connection with or relating to the Plan, the Plan Summary, the Confirmation Order and the Bankruptcy Code;

(xiii) Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xiv) Continue to enforce the automatic stay through the Effective Date;

(xv) Hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, and issues presented or arising under the Plan, including but not limited to disputes among Holders or with the Reorganized Debtor and arising under agreements, documents or instruments executed in connection with or governed by the Plan;

39

(xvi) Hear and determine any other matter relating to the Plan, its interpretation or enforcement; and

(xvii) Enter a final decree and close the Chapter 11 Case.

**Section 11.02.     Non-Exclusive Jurisdiction of Bankruptcy Court.**

Following the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(i) Recover all Property of the Estate, wherever located;

(ii) Hear and determine any motions or contested matters involving Taxes, Tax refunds, Tax attributes and Tax benefits and similar or related matters with respect to any of the Debtor, arising prior to the Confirmation Date or relating to the period of administration of the Chapter 11 Case, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

(iii) Hear any other matter not inconsistent with the Bankruptcy Code.

**Section 11.03.     Failure of Bankruptcy Court to Exercise Jurisdiction.**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor or the Chapter 11 Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XII

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**Section 12.01.     Conditions Precedent to Confirmation.**

Confirmation of the Plan is subject to:

(a)     the Disclosure Statement having been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code;

(b)     entry of the Confirmation Order in form and substance reasonably satisfactory to the Debtor, the Creditors' Committee and the Plan Sponsors shall be in full force and effect;

(c)     the Plan and related documents having been filed in substantially final form prior to the Confirmation Hearing;

**Section 12.02.     Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date is subject to:

(a)      the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Plan Sponsors and the Creditors' Committee shall be in full force and effect;

(b)      the Plan and related documents, including the Amended Operating Agreement, in form and substance reasonably satisfactory to the Debtor and the Plan Sponsors (and, with respect to the Plan and all matters relating to the GUC Note, the Creditors' Committee), being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)      repayment of the DIP Claims and repayment of all Obligations under the DIP Agreement;

(d)      all other actions and documents necessary to implement the Plan shall have been effected or executed and shall be reasonably acceptable to the Debtor, the Plan Sponsors and the Creditors' Committee;

(e)      the New Equity Units shall have been authorized in the amounts set forth in the Plan and on terms reasonably satisfactory to the Debtor, the Plan Sponsors and the Creditors' Committee;

(f)      all material governmental, regulatory and third party approvals, waivers and/or consents in connection with the Plan, if any, having been obtained and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan; and

(g)      entry into the Exit Facility Agreement.

**Section 12.03.      Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.**

The Debtor, subject to receipt of consent from the Plan Sponsors, the Creditors' Committee, (and, to the extent its Claims have not been fully satisfied, the DIP Lender), which consent shall not be unreasonably withheld, and to the extent not prohibited by applicable law, shall have the right to waive one or more of the conditions precedent set forth above at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan.

**Section 12.04.      Effect of Failure of Conditions.**

If all of the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than 60 days after the Confirmation Date, or by such later date as set forth by the Debtor in a notice filed with the Bankruptcy Court prior to the expiration of such period, then the Debtor may file a motion to vacate the Confirmation Order before all of the conditions have been satisfied or duly waived.  If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims

41

against or Interests in the Debtor; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other entity with respect to any matter set forth in the Plan.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**Section 13.01.    Binding Effect of Plan.**

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, any Holder of any Claim or Interest treated herein and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**Section 13.02.    Severability.**

Should the Bankruptcy Court determine prior to entry of the Confirmation Order, that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.  The Debtor reserves the right not to proceed with Confirmation and/or consummation of the Plan if any such ruling occurs.

**Section 13.03.    Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the state of Delaware or the United States of America.

**Section 13.04.    Amendments.**

**a.    Plan Modifications.**

The Plan may be amended, modified, or supplemented by the Debtor, with the consent of the Plan Sponsors and the Creditors' Committee (and, to the extent its Claims have not been fully satisfied, the DIP Lender) in the manner provided for by section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date and upon consultation with the Creditors' Committee or the General Unsecured Claims Administrator as applicable, so long as such action does not materially and

42

adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

### b.     Other Amendments.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan, with the consent of the Plan Sponsors and the Creditors' Committee, (and, to the extent its Claims have not been fully satisfied, the DIP Lender) without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

### Section 13.05.     Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date, with the consent of the Plan Sponsors.  If the Debtor takes such action, the Plan shall be deemed null and void.

### Section 13.06.     Confirmation Order.

The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Commencement Date and ending on the Confirmation Date, except for any acts constituting willful misconduct or fraud.

### Section 13.07.     Section 1125(e) of the Bankruptcy Code.

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and its affiliates, agents, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and therefore, to the extent permitted by Section 1125(e) of the Bankruptcy Code, are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

### Section 13.08.     Notices.

Any notice required or permitted to be provided under the Plan shall be in writing and served by either prepaid (i) certified mail, return receipt requested, (ii) hand delivery, or (iii) overnight delivery service, to be addressed as follows:

If to the Debtor or Reorganized Debtor:

> Olshan Frome Wolosky LLP
> Counsel for Namco, LLC
> Park Avenue Tower
> 65 East 55th Street
> New York, NY  10022
> Attn:   Michael Fox, Esq.
>             Jordanna Nadritch, Esq.
>
> A M Saccullo Legal, LLC
> Co-Counsel for Namco, LLC
> 27 Crimson King Drive
> Bear, DE 19701
> Attn: Anthony M. Saccullo, Esq.

With a copy to:

> Namco, LLC
> 100 Sanrico Drive
> Manchester, CT 06042
> Attention:      Mark Scott

**Section 13.09.      Filing of Additional Documents.**

On or before substantial consummation of the Plan, or such later time as may be authorized by the Bankruptcy Court, the Debtor is authorized to issue, execute, deliver or File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence implementation of the terms and conditions of the Plan.

**Section 13.10.      Time.**

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

**Section 13.11.      Exhibits/Schedules.**

All exhibits and schedules to the Plan and any Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth herein.

**Section 13.12.      Defenses with Respect to Impaired or Unimpaired Claims.**

Except as otherwise specifically provided in the Plan, nothing shall affect the parties' rights and/or legal and equitable defenses with respect to any Impaired or Unimpaired Claim,

including but not limited to all rights relating to legal and equitable defenses to setoffs or recoupments against any Unimpaired Claim.

**Section 13.13.    No Injunctive Relief.**

No Claim shall be entitled to specific performance or other injunctive, equitable or other prospective relief except as may be specified in the Plan.

**Section 13.14.    No Admissions.**

Notwithstanding anything herein to the contrary, prior to the Effective Date, nothing contained in the Plan shall be deemed an admission by any party with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim; provided, however, that the provisions of the Plan shall be treated as admissions under the Federal Rules of Evidence upon the Effective Date.

**Section 13.15.    Extension of Time.**

Any period of time or deadline under the Plan may be extended by agreement of the parties affected thereby, or by order of the Bankruptcy Court upon good cause shown.

**Section 13.16.    Creditors' Committee.**

As of the Effective Date, the Creditors' Committee shall terminate and dissolve and the members thereof and the professionals retained by the Creditors' Committee in accordance with section 1103 of the Bankruptcy Code shall be released and discharged from their respective fiduciary obligations.  In addition, except as otherwise specified, the retention and employment of the attorneys, accountants and other agents of the Creditors' Committee shall terminate on the Effective Date.  Notwithstanding the dissolution of the Creditors' Committee, the Creditors' Committee shall continue to exist, and its attorneys, accountants and agents may continue to act, for the purpose of pursuing and objecting to Fee Claims pursuant to Section 3.02 of the Plan.

**Section 13.17.    Payment of Statutory Fees.**

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code, and any applicable interest thereon, shall be paid by the Debtor on or before the Effective Date, and all such fees payable after the Effective Date shall be paid by the applicable Reorganized Debtor as and when such fees become due.  Any deadline for filing Administrative Expense Claims shall not apply to fees payable pursuant to section 1930 of title 28 of the United States Code.

**Section 13.18.    Conflict.**

To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any other party pursuant to the Plan, the terms of the Plan control the Disclosure Statement and any such agreement.  To the extent of any inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall govern.

**Section 13.19.        Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be, deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

2161891-1

Dated: Wilmington, Delaware
        June 20, 2013

                                        Respectfully submitted,

                                        **NAMCO  LLC**

                                        By:   /s/ Mark Scott
                                              _____
                                              Mark Scott
                                              Chief Executive Officer for NamcoLLC


Counsel:

**OLSHAN FROME WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone:  (212) 451-2300
Facsimile:  (212) 451-2222

Anthony M. Saccullo (Bar No. 4141)
Thomas H. Kovach (Bar No. 3964)
27 Crimson King Drive
Bear, Delaware 19701
Telephone (302) 836-8877
Facsimile (302) 836-8787
ams@saccullolegal.com
kovach@saccullolegal.com

*Counsel for the Debtor and Debtor in Possession*

47